WILLIAM A. CULPEPPER, Judge Pro Tern.
This is an appeal by defendant from a partial summary judgment in favor of plaintiff.
In October 1986, plaintiff, B & G Crane Service, Inc., d/b/a Sun Erection Company (hereinafter B & G), contracted with Port City Group, Inc. (hereinafter Port City) to perform labor and furnish certain materials for the erection of buildings at Chennault Industrial Air Park in Lake Charles, Louisiana. B & G completed its work and a balance of $186,709.81 remained due on the contract. Port City refused to pay this amount because it contended B & G had indicated to defendant it would not comply with its contractual obligation to indemnify defendant against certain personal injury lawsuits arising out of injuries sustained during B & G’s construction project, in which Port City was named as a defendant. Port City argues this constituted anticipatory breach of the contract, thereby relieving Port City of its obligation to pay any sums due B & G.
On September 16,1987, B & G filed a lien in the mortgage records of Calcasieu Parish in an effort to secure final payment. On September 23, 1987, Port City filed a lien release bond in the mortgage records naming defendant, Aetna Casualty & Surety Company, as its surety.
On January 14, 1988, B & G filed suit in Orleans Parish against defendant seeking final payment in the amount of $177,-422.81.[1] This suit was transferred to Cal-casieu Parish, the forum of convenience, on September 4, 1988. After defendant answered alleging anticipatory breach, B & G filed a motion for partial summary judgment seeking the sum of $170,926.81, representing the undisputed amount due under its contract.[2] The motion was heard and the trial judge granted partial summary judgment in the amount of $170,-926.81. Defendant appeals.
LAW
On appeal, defendant contends that genuine issues of material fact exist as to: (1) whether plaintiff refused to comply with the indemnity agreement, and (2) the amount due defendant for expenses and attorney’s fees already incurred in defending lawsuits covered by the indemnity clause.
Clause 10 of the contract between B & G and Port City provides in pertinent part:
“10. (a) Subcontractor shall indemnify and hold Contractor harmless from and against all claims and causes of action for damages and expenses of every kind and character (including cost of suit and reasonable attorneys’ fees) asserted against Contractor, its subsidiaries and affiliated companies, its agents, servants *712 and employees, by any firm, person, corporation or other legal entity arising:
(1) from injury to or death of any employees of the Subcontractor.
(2) from injury to or death of any person or damage to any property arising in any manner while Subcontractor has complete control and use of the premises in question.
* * * * * *
(c) The Subcontractor shall carry at his own expense Workers Compensation and Employer’s Liability, Comprehensive General Liability, Automotive Liability, and Excess (Umbrella) Liability with the limits of not less than those set forth:”
Clause 10, quoted above, clearly obligates B & G to indemnify Port City against the described claims for damages. There is no duty to defend, but there is an obligation to indemnify for “cost of suit and reasonable attorneys’ fees” asserted against Port City. Port City contends these costs and attorney’s fees are due by B & G as soon as they are incurred by Port City. B & G contends they are not due until required by judgment against Port City.
Clause 21 of the contract provides that Port City may withhold retainage from B & G in the amount of 10% to insure that B & G will comply with the contract. Final payment is due only if B & G has complied with all contractual provisions.
As a result of accidents that occurred during the construction project, at least five lawsuits have been filed alleging death or injury caused by the negligence of B & G or its employees, and naming both B & G and Port City as defendants. These lawsuits allege damages in excess of ten million dollars. Copies of the petitions were admitted into evidence at the hearing on the motion for a summary judgment.
Defendant argues the doctrine of anticipatory breach, while B & G argues it has not breached the contract because the indemnification obligation has not matured. B & G contends that no judgments have been rendered against Port City so there is nothing to indemnify.
The doctrine of anticipatory breach applies when an obligor announces he will not perform an obligation which is due sometime in the future. The obligee need not wait until the obligor fails to perform for the contract to be considered in breach. See, Andrew Dev. Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977).
Defendant argues B & G indicated its refusal to comply with the indemnity clause, thereby relieving defendant of its obligations, under the doctrine of anticipatory breach. Defendant relies on the affidavit of Gene Dark, President of Port City, which states in part:
“3.
In July 1987, Xavier Grilletta, Sr., acting on behalf of B & G Crane Service, Inc., told him that B & G would not defend or indemnify the Port City Group, Inc. for claims arising out of the injuries and deaths occurring on the Chen-nault/Boeing project.
4.
B & G’s insurer, USF & G, has also refused to defend or indemnify the Port City Group, Inc.
5.
On or about August 17, 1987, he received a letter from B & G Crane Service, d/b/a Sun Erection Company, signed by X. J. Grilletta, Sr., confirming USF & G’s failure to indemnify and defend Port City Group, Inc. A copy of the letter is attached to this affidavit.
6.
The Port City Group has expended substantial sums as costs and attorneys fees in defense of claims within the scope of the indemnification agreement between B & G and the Port City Group, Inc.
7.
The Port City Group, Inc. has not made final payment to B & G because payment is not due in light of B & G’s failure to fulfill its defense and indemni *713 fication obligations required by the contract.”
The attached letter dated August 14, 1987 received by Gene Dark from X. J. Grilletta, Sr., representing B & G, states:
“Dear Mr. Dark:
This will confirm our recent telephone conversations in which we discussed the amount due and owing Sun Erection Company, to-wit, the sum of TWO HUNDRED TWENTY THOUSAND AND NO/lOO ($220,000.00) DOLLARS.
At the time that our contract was entered into, our insurer, U.S.F. & G., was made aware of the contract and they were aware of the terminology of the contract concerning indemnity and providing a defense. At the present time, we understand that U.S.F. & G. is taking the position that they do not owe a defense under the particular set of circumstances involved. Your insurer, Aetna Casualty & Surety Company, has made demand, through its attorney, one Tra-han, upon U.S.F. & G. to furnish a defense. Our understanding is that if U.S.F. & G. does not furnish a defense, Aetna will furnish the defense, and will then sue U.S.F. & G. to recoup the cost of the defense. In any event, the dispute will be between the insurers. Accordingly, I see no reason for you to withhold the sums that are due. We are bound by our contract. We are not trying to avoid any portion of our contract. We will do whatever is needed, and whatever we are required to do.”
The decisive issue is whether Dark’s affidavit and the attached letter create a genuine issue of material fact. In paragraph “3” of his affidavit, Dark says Grilletta told him B & G would not defend against the claims. However, a reading of the indemnity clause, quoted above, shows there is no obligation by B & G to defend. Therefore, this does not create an issue of material fact.
Dark’s affidavit also states Grilletta told him B & G would not indemnify Port City. However, the attached letter from Grilletta does not state that B & G will not comply with the indemnity agreement. On the contrary, the letter expressly states B & G will comply. The letter does state that B & G’s liability insurer, U.S.F. & G., will not furnish a defense. But, we have already concluded B & G does not have a duty to defend.
For purposes of summary judgment, the only showing of an issue of material fact as to whether B & G refused to comply with its indemnity obligation is the unsubstantiated statement in Dark’s affidavit that Grilletta told him in July 1987 that B & G would not comply. But, in the attached letter written by Grilletta, dated August 14, 1987, the author states B & G will comply with all obligations of its contract. Thus, Dark’s affidavit is contradicted by the letter which he attaches and relies upon.
From Dark’s affidavit and Grilletta’s letter, it is apparent that the parties were principally concerned about whose insurer would defend against the pending claims. They were not as concerned about indemnity after these lawsuits were completed.
In Aydell v. Charles Carter & Co., Inc., 388 So.2d 404, at pages 406, 407 (La.App. 1 Cir.1980), writ den., 391 So.2d 460 (La.1980), the court stated the law as follows:
"The party seeking summary judgment has the burden of showing the complete absence of a genuine issue of material fact. All doubts will be decided in favor of a trial on the merits and no summary judgment will be granted even if the trial court has grave doubts regarding a party’s ability to establish disputed facts. City of Baton Rouge v. Cannon, 376 So.2d 994 (La.App. 1st Cir.1979).
To determine whether there is a genuine issue of fact, a trial court must of necessity examine the merits. Despite the presence of disputed facts, summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues. Merely formal allegations without substance will not preclude summary judgment. City of Baton Rouge v. Cannon, supra; Metropolitan Bank of Jefferson v. Summers, 257 *714 So.2d 179 (La.App. 4th Cir.1972), writ refused 261 La. 462, 259 So.2d 914 (1972).”
We conclude Dark’s affidavit is so patently vague and insubstantial as to present no genuine issue of fact.
Defendant also argues there is an issue of fact as to the amount due, because it has incurred substantial expense for costs and attorney’s fees in defense of claims within the scope of the indemnity agreement, and it is entitled to prove these amounts and claim an offset at a trial on the merits. We do not agree. A reading of Clause 10, quoted above, shows these expenses are included in the sums to be indemnified by B & G. These sums, like the damages sought in the pending lawsuits, are to be indemnified on completion of litigation.
On appeal, defendant does not argue that the unliquidated claims against it in the pending lawsuits can offset the liquidated amounts due B & G under the contract. Therefore, we do not consider this as an issue.
For the reasons assigned, the judgment appealed is affirmed at the cost of defendant-appellant.
AFFIRMED.

. Subsequent to the filing of the lien, a payment of $9,287.00 was received by plaintiff under an insurance claim which reduced the amount due to $177,422.81.

. The sum of $6,496.00 of the amount sought in the petition was excluded by plaintiff from the motion for partial summary judgment because of the existence of issues of fact concerning plaintiffs entitlement to this sum.