LDECUIR, Judge.
This appeal arises from a contractual dispute between Rick Granger Enterprises, d/b/a Lafayette Boating Centre, and Gulf Coast Bank & Trust Company. Lafayette Boating appeals summary judgment granted in favor of Gulf Coast Bank on the question of whether the contract between the parties requires Lafayette Boating to refund, upon the bank’s request, all of the unearned dealer finance charges, or commissions, paid to it by the bank. Because we find error in the amount awarded by the trial court, and the record contains no evidence as to the appropriate amount which should have been awarded, we reverse the summary judgment and remand for a full evidentiary hearing.
Lafayette Boating, now no longer in business, was a retailer of boats and other water craft. In 1998, Lafayette Boating entered into a contractual relationship with Gulf Coast Bank to secure financing for its customers for the purchase of water craft. Under the agreement, Lafayette Boating received a commission, or “dealer finance charge,” for every customer loan placed with Gulf Coast Bank. Although the commission was paid to Lafayette Boating up front, it was calculated based on the *404 amount of income, in interest and/or finance charges, the bank expected to receive during the duration of the loan. Thus, if a loan was prepaid by the customer, the bank would not earn as much interest or other charges as it would have had all of the scheduled payments been made, as the customer was refunded a portion of the finance charge based on the time of prepayment. Therefore, the bank considered the dealer’s commission to be proportionately “unearned” until such time as the loan was paid out according to its terms.
In cases of prepayment, the bank required reimbursement from Lafayette Boating of a proportionate share of the dealer finance charge. To this effect, the ^parties signed a “General Dealer Agreement” which contained the following provision:
6. Dealer Reserve Account
Prior to evaluating for purchase any proposed Contract under this- Agreement, Bank shall establish a separate Dealer Reserve Account for Dealer: The Dealer Reserve Account shall be a non-interest bearing account controlled exclusively by Bank pursuant to this Agreement. Notwithstanding any other provisions of this Agreement, Dealer shall be required to maintain a minimum credit balance in the Dealer Reserve Account of $3000 until such time ás each and every Contract has been paid in full or repurchased by Dealer and all of Dealers’s obligations under this Agreement have been satisfied.
Notwithstanding any other provision [of this] agreement, Bank shall retain the right to [require that] all or a portion of any amounts owed to Dealer from the purchase of any Contract [must be] deposited in the Dealer Reserve Account, [regardless] of whether the balance of that account exceeds the minimum required balance required [sic] specified above. Bank reserves the right to exercise this option at any time and at its discretion while this Agreement remains in effect, regardless of whether the Dealer is in default under Paragraph 11 of this Agreement. Bank may debit the Dealer Reserve Account without notice to or demand upon Dealer for any amount which may be owed by Dealer to Bank under the terms of this Agreement and Dealer agrees to immediately replenish the minimum credit balance required in the Dealer Reserve Account. The obligations of Dealer set forth in this Paragraph 6 shall remain in full force and effect, notwithstanding any default by Dealer under Paragraph 11 of this Agreement or where the Agreement is terminated pursuant to Paragraph 12. [Language in brackets assumed to be correct; illegible in record.]
Lafayette Boating and Gulf Coast Bank enjoyed a productive relationship, with over one hundred loans being placed with the bank in less than two years. Lafayette Boating, however, then went out of business and failed to maintain the required $3,000.00 minimum balance in the Dealer Reserve Account. As a few loans were prepaid, Gulf Coast Bank reimbursed a portion of the customers’ finance charges, thereby not only depleting the Dealer Reserve Account but creating a negative balance of $2,569.17. The bank then filed suit for that amount and also sought to enforce Paragraph 6 of the contract, asking the court to order Lafayette Boating to ^deposit into the Dealer Reserve Account all of the unearned commissions on every outstanding loan as of the date of suit. The bank asserted it was entitled to an amount in excess of $146,000.00.
In addition to the contractual provisions relied upon by Gulf Coast Bank, the doctrine of anticipatory breach of contract *405 by Lafayette Boating was raised. The doctrine “applies when an obligor announces he will not perform an obligation which is due sometime in the future. The obligee need not wait until the obligor fails to perform for the contract to be considered in breach.” B & G Crane Service, Inc. v. Aetna Cas. and Sur. Co., 586 So.2d 710, 712 (La.App. 3 Cir.1991), writ denied, 590 So.2d 591 (La.1992), quoting Andrew Dev. Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977).
Lafayette Boating, by contrast, denies that it intends to breach the contract and further denies that the bank has the contractual right to require a deposit of all unearned commissions as of the date of suit. First, Lafayette Boating contends that the amount of unearned commissions decreases with each payment made by each debtor on every loan; therefore, the current amount is far less than the $146,000.00 that may have been a correct amount on the day suit was filed. Second, Lafayette Boating contends that the bank’s attempt to collect sums that might become due in the future, only if all loans are prepaid, is premature, as the bank can simply file suit for recovery of unearned commissions if and when any other loans are prepaid.
On motion for summary judgment, the bank presented as evidence financial records and an affidavit from a bank employee. Lafayette Boating did not present any evidence but relied on its legal arguments to defeat summary judgment. Relying on the provisions of the contract, the trial court granted the motion and ordered Lafayette Boating to deposit $146,269.10, the amount prayed for in the petition, into |4the Dealer Reserve Account. The trial judge noted that no evidence was offered “to contradict the terms of the written agreement or the amount that Plaintiff is asking Defendant to deposit into the account.”
Summary judgments are favored in the law and shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B). The law further states that “after adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La.Code Civ.P. art. 966(C)(1).
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). We are cognizant of the fact that article 966 states that the burden of proof remains with the movant. Accordingly, we must determine if summary judgment was appropriately granted in this case, and in making this determination, we must consider the threshold question of whether Gulf Coast Bank met its burden of proof.
As evidence of its allegations, Gulf Coast Bank presented an affidavit, the contract signed by representatives of both parties, and financial records from the bank. The bank proved, through the undisputed contractual provisions, that it was entitled to demand deposit of unearned commissions into the Dealer Reserve Account. We conclude, however, that the bank did not prove the amount of money it was entitled to demand for deposit by Lafayette Boating.
1 fiThe realities of the loan transactions which underlie this contractual dispute lead to the undeniable conclusion that the amount of unearned commissions today is *406 far less than the amount of unearned commissions as of the date suit was filed. The contract allows the bank to demand only the lesser amount, which lesser amount was not proved, and the trial court was in error in ordering the deposit of an amount in excess of that. In effect, the trial court’s order required Lafayette Boating to deposit an amount far greater than its maximum exposure to the bank, assuming that every loan would be prepaid and require a partial refund to the customer, a very unlikely scenario.
Our review of the record reveals that Gulf Coast Bank did not meet its burden of proof and is not entitled to judgment as a matter of law. Accordingly, we must reverse the judgment rendered below and remand this case for a determination of the appropriate amount of money to be deposited by Lafayette Boating into the Dealer Reserve Account. After evidence is taken, the trial court need not award the full amount of unearned commissions as of that date, but, of course, may award a lesser amount if that is deemed appropriate.
Costs of this appeal are assessed to Gulf Coast Bank.
REVERSED AND REMANDED.