LMAX N. TOBIAS, JR., Judge.
This appeal arises out of the resignation of Allan L. Durand as trustee for the Jerome S. Fertel Trusts.[1] Jerome S. Fer-tel appeals the entry of summary judgment against him by the trial court on 8 February 2002, in the amount of $230,000.00. For the following reasons, we affirm the judgment.
The appellant is one of two sons of the late Ruth U. Fertel, and sole beneficiary of three Jerome S. Fertel trusts. Mr. Du-rand and John Ghio, both of whom had previously represented Mr. Fertel in various legal matters, were appointed as co-trustees of the trusts, following the resignation of the original trustee. At that time, combined trust assets were valued at approximately $60,000,000.00.
Messrs. Fertel, Durand, and Ghio entered into an “original understanding” that was reduced to writing and specified that Messrs. Durand and Ghio would not only act as trustees, but also manage all trust investments, legal affairs, accounting, [¡.tax returns, and banking, et cetera. In addition, Messrs. Durand and Ghio would continue handling Mr. Fertel’s personal legal affairs. It was explained to Mr. Fertel, however, that for Mr. Durand to perform all these services for the trusts, it would be necessary for him to withdraw as managing partner of his law firm. In light of his withdrawal, it was understood that Mr. Durand would remain as trustee for a term of five years. This term was based on the fact that the trusts would terminate five years after the death of Ms. Fertel.
Less than a year later, Mr. Fertel became dissatisfied with Mr. Durand and requested his resignation. With the assistance of Mr. Ghio, Messrs. Fertel and Durand negotiated an agreement dated 1 December 2000, under which Mr. Durand would continue to serve as trustee for an additional six months. The agreement further provided that if Mr. Fertel requested that Mr. Durand resign at the conclusion of six months, Mr. Durand would be entitled to severance pay compensation of $10,000.00 per month for the following two years.
Six months later, Mr. Fertel asked Mr. Durand to resign. On 7 June 2001, Messrs. Fertel and Durand executed a document entitled “Resignation by Trustee” which, among other things, confirmed Mr. Fertel’s obligation to pay the severance pay compensation as outlined under the previous agreement executed in December 2000. After the June 2001 severance payment was made, Mr. Fertel ceased all payments to Mr. Durand.
Soon thereafter, Mr. Fertel filed a petition to terminate the trusts and have the court declare Mr. Durand’s resignation to *300 be effective. Mr. Durand filed a hreconventional demand for the severance pay compensation Mr. Fertel refused to pay. He also sought to have his resignation as co-trustee declared ineffective due to Mr. Fertel’s fraudulent breach of the agreement.[2]
Mr. Durand filed a motion for partial summary judgment for the payment of the severance pay under the 1 December 2000 agreement. On 8 February 2002, the trial court rendered judgment in favor of Mr. Durand in the sum of $230,000.00.[3] No reasons were given; however, in the judgment, the trial court stated:
Considering Allan L. Durand’s Motion for Summary Judgment and supporting Affidavit, together with the pleadings, Affidavit of Jerome S. Fertel, and all other matters submitted on behalf of Jerome S. Fertel, the Court finding that the compensation provision of the contract is clear and unambiguous, and further finding that Jerome S. Fertel has repudiated any obligation to make any payments under said contract, this creating an “anticipatory breach” thereof, and that therefore Allan L. Durand is entitled to summary judgment as a matter of law[.]
In this appeal, Mr. Fertel contends that the trial court erred in entering summary judgment in favor of Mr. Durand because the agreements of 1 December 2000 and 7 June 2001 are null and void because Mr. Durand breached his fiduciary duties as trustee for the trusts and attorney for himself. Mr. Fertel also contends that the agreements are void for failure or want of consideration.
It is well settled that review of a grant of summary judgment is de novo. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230. Therefore, we review the evidence considered by the trial court in rendering its judgment.
Mr. Durand’s deposition was entered into the record with his motion. He testified that he represented Mr. Fertel in the proceedings to remove the previous trustee; he and Mr. Ghio were asked to be co-trustees in December 1999. Before accepting, Mr. Durand told Mr. Fertel that to perform all the work of the trusts himself, he would have to resign as managing partner of his law firm. It was agreed that Mr. Durand could represent other clients, but only after completing his trustee obligations. Mr. Fertel said that he would leave the trust in place for five years. Relying on that assurance, Mr. Durand became co-trustee and withdrew from his firm.[4] Court approval was obtained on 20 December 1999, with respect to Trust No. 1, and on 21 January 2000, with respect to Trusts Nos. 2 and 3.
In October 2000, Mr. Durand learned that Mr. Fertel was dissatisfied with him in connection with Mr. Durand’s refusal to release $6.8 million dollars in Trust No. 1 to Mr. Fertel, who was then in Las Vegas. Mr. Durand had intended to invest the money in a special money market fund that was yielding 6% per annum interest. When asked, Mr. Fertel could not tell Mr. Durand why he wanted the money. Fol *301 lowing their telephone conversation, Mr. Durand conferred with Mr. Ghio and they met with Ruth U. Fertel to discuss the matter with her as settlor of the first trust. She told the men that she did not want the money transferred to her son and placed her wishes in writing. Mr. Durand told Ms. Fertel that her son | smight want him to resign over his refusal to transfer the money; she asked him not to resign, stating that her son needed a trustee.[5]
Mr. Fertel learned that Mr. Durand spoke with his mother about the money and was furious, telling Mr. Durand that he considered that “going behind his back.” Shortly after this incident, Mr. Fertel asked Mr. Durand to resign. At a meeting held in October 2000, Mr. Durand informed him that, in his legal opinion, no judge would remove him as trustee for the events that had transpired. However, Mr. Durand told him that he would resign in six months, but only if Ms. Fertel requested. She did so in writing on 8 December 2000.
Based on Mr. Fertel’s assurance that he would be a trustee for five years, Messrs. Durand and Fertel agreed that Mr. Du-rand would remain trustee for six months. If Mr. Fertel then requested Mr. Durand’s resignation, Mr. Durand would resign, but would be paid $10,000.00 per month for two years to compensate him for a premature termination of the position. Mr. Ghio acted as Mr. Fertel’s legal advisor during the meeting and during private discussions the two men had at Mr. Ghio’s office outside Mr. Durand’s presence. These discussions led to the preparation of the 1 December 2000 agreement, which was signed by all three men. Mr. Ghio was responsible for some of the verbiage in that docum'ent; Mr. Durand believed it was prepared at Mr. Ghio’s office.
After the six months, Mr. Ghio reported that Mr. Fertel still wanted his resignation. Mr. Durand then prepared and executed the document entitled “Resignation of Trustee,” in which Mr. Durand agreed to resign and Mr. Fertel confirmed that he would pay Mr. Durand for the next two years in accordance with | fithe agreement. Both men signed the document before witnesses; Mr. Durand and Mr. Ghio, as his witness, signed in Lafayette, while Mr. Fertel and his witness signed in New Orleans.
Mr. Durand continued to perform legal work for the trusts and Mr. Fertel following his resignation in June 2001. He handled a continuing litigation matter and monitored the trust accounts. In addition, he resolved a tax dispute with the State of Louisiana on behalf of Trust No. I.[6]
Also in the record is the affidavit of Mr. Fertel, who states that Mr. Durand never informed him that the management of the trusts would require him to resign from his law firm. In addition, he claims that Mr. Durand informed him at the inception of the agreement that he would resign anytime upon three months notice without compensation, as confirmed by Mr. Ghio.[7] Finally, Mr. Fertel states that it *302 was never his intention to pay Mr. Durand any compensation if not earned.[8]
We have also reviewed the deposition of Mr. Ghio, which was filed into the record by Mr. Fertel. Mr. Ghio has remained trustee and attorney for the trusts and Mr. Fertel. He testified that Mr. Durand had represented Mr. Fertel in the removal of the previous trustee and asked Mr. Ghio if he wanted to be a co-trustee with |7him. The two men then met with Mr. Fertel after the agreement was drawn to review it with him. Mr. Ghio confirmed that Mr. Fertel was told that Mr. Durand was going to withdraw as partner from his law firm to allow him to be on twenty-four-hour call for handling trust matters and anything else Mr. Fertel needed. Mr. Ghio also confirmed that Mr. Fertel stated that he would “try this for five years.”
Less than one year later, Mr. Fertel became dissatisfied with Mr. Durand’s performance and wanted him terminated as a trustee. Mr. Ghio attempted to mediate an agreement between the two men that would be satisfactory to both. Mr. Ghio suggested the six-month cooling-off period, to which they agreed. Mr. Fertel also agreed at that time that if he asked Mr. Durand to resign after six months, Mr. Fertel would continue to pay him for two more years. Mr. Durand agreed to perform legal services for Mr. Fertel during the two years at no extra charge. The verbal agreement was reduced to writing on 1 December 2000. Mr. Ghio testified that the contract accurately set forth the agreement between the two men.
Mr. Ghio testified that Mr. Fertel was corresponding or meeting with another attorney during the time of these discussions; this attorney saw the 1 December 2000 agreement, although Mr. Ghio could not remember if that was before it was signed. In fact, Mr. Ghio faxed the document to him. However, the attorney was not present during any of the discussions leading up to its signing.
Once it was decided that Mr. Durand would resign, a subsequent document was prepared entitled “Resignation of Trustee.” Mr. Ghio stated that either at the time Mr. Fertel signed it or within days after that, he instructed Mr. Ghio: “Don’t pay [Mr. Durand] any more money. I’m going to make him sue me.”
Finally, the 12 October 2001 deposition of Ms. Susan Simon was entered into the record. She is a certified public accountant in New Orleans and was Mr. |sFertel’s accountant as of the date of the deposition. She witnessed Mr. Fertel’s signature on the June 2001 resignation of Mr. Durand as trustee. Shortly after Mr. Fertel signed the resignation agreement, he told Ms. Simon that he did not intend to honor it, stating: “I’m not going to pay [Mr. Durand], He’s going to have to sue me.”
Mr. Fertel’s first assignment of error is that Mr. Durand is not entitled to compensation because he breached his fiduciary duty as trustee by seeking to recover money for duties not performed. Mr. Fertel contends that it was the understanding of both him and Mr. Ghio that Mr. Durand *303 would continue to be compensated after June 2001 only if he performed services for him and/or the trusts. He argues that Mr. Durand led him to believe that he was owed money for his resignation and that the negotiation and agreement for severance pay was solely for his benefit and interest, in violation of his fiduciary duty as trustee.
In response, Mr. Durand relies on Johnson Rice & Co. v. Boudreaux, 97-1773, p. 4 (La.App. 4 Cir. 2/25/98), 710 So.2d 294, 296, in which this court stated:
As set forth in the Civil Code, “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ.Code art.2046.
Mr. Durand argues that nothing in the December 2000 agreement states he will be compensated only if he performs legal work. Because the contract is clear and unambiguous, Mr. Durand contends that it should be enforced as written.
It is elementary that a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art.1906. A contract is formed by the consent of the parties through offer and acceptance. La. IflC.C. art.1927. Contracts have the effect of law and must be performed in good faith. La. C.C. art.1983. However, an obligation cannot exist without a lawful cause. La. C.C. art.1966. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. art.1968. Finally, a contract is absolutely null when it violates a rule of public order. A contract that is absolutely null may not be confirmed. La. C.C. art.2030.
Initially, we find that that the contract on its face creates an obligation by both Messrs. Durand and Fertel. Mr. Durand agrees to resign as trustee and Mr. Fertel agrees to pay Mr. Durand the total sum of $240,000.00. We find, as did the trial court, that the 1 December 2000 contract is clear and unambiguous. Therefore, it is enforceable unless otherwise prohibited by law or against public policy or null for violating a rule of public order, as urged by Mr. Fertel.
We have reviewed the Jerome S. Fertel No. 2 and No. 3 Trusts (the Jerome S. Fertel No. 1 Trust is not in the record before us); both provide that “the Trustee shall be entitled to reasonable compensation and reimbursement of normal expenses.”[9] We have also reviewed the case cited by Mr. Fertel, Albritton v. Albritton, 600 So.2d 1328 (La.1992) for the proposition that the contracts in question are absolute nullities because they violate the trust provisions calling for “reasonable compensation.” However, we find Albrit-ton inapplicable to the present matter because that case involved the attempted extension of the term of a trust, which provided for termination dates specified by the settlor. Here, the word 11 (/‘reasonable” is open to interpretation and was determined by the parties in their subsequent agreements.[10] Because the contracts do not impermissibly alter or *304 modify the trust agreements, we find that they were entered into outside the trusts.
We also find La. R.S. 9:1788, relevant to our analysis:
A trustee may resign at any time by giving written notice of resignation to each of the beneficiaries or by mailing written notice to each at his last known address. The trust instrument may provide another method of resignation and notice.
We find no eases that interpret this article. We note, however, that absent Mr. Durand’s voluntary resignation as trustee, the record does not contain evidence of any cause for Mr. Durand’s removal pursuant to La. R.S. 9:1789, which provides that a trustee may be removed by a proper court for “sufficient cause shown.” That statute contemplates more than a mere technical violation of the Trust Code as grounds for removal of a trustee. Curtis v. Breaux, 458 So.2d 582 (La.App. 3 Cir.1984). Mere hostility or incompatibility between the trustee and a beneficiary is not sufficient grounds for removal; there must be factual allegations that the hostility interfered with or adversely affected the administration of the trust for it to be a reason for removal. Martin v. Martin, 95-0466 (La.App. 4 Cir. 10/26/95), 663 So.2d 519, writ denied, 95-2806 (La.1/29/96), 666 So.2d 682. We do not believe that Mr. Durand’s meeting with Ms. Fertel and his refusal to transfer $6.8 million to her son would justify his removal as trustee.
The next issue is whether the December 2000 contract is enforceable in the context of Mr. Durand as a trustee. Commentators have written that if beneficiaries are of full age and sound mind, they may enter into valid agreements |nwith the trustee as to his compensation, provided the trustee displays “the utmost good faith and fairness in the transaction.” Bo-gert, The Law of Trusts and Trustees, § 976, pp. 147-48 (Rev.2d Ed.1983). The Restatement (Sd) Trusts, § 38(f) states in pertinent part:
The amount of compensation or indemnification to which the trustee would otherwise be entitled may be enlarged or diminished by agreement between the trustee and the beneficiaries. Such an agreement will bind only beneficiaries who are parties to it, directly or by representation. An agreement enlarging the trustee’s compensation or indemnification will not bind ... a consenting beneficiary if the trustee failed to disclose all the relevant circumstances which the trustee knew or should have known, or if the agreement is unfair to the beneficiary.
We find that Mr. Fertel entered into a valid agreement to enlarge the compensation of Mr. Durand in return for his early resignation as trustee. This agreement did not in any way modify the trust so as to render it null and void. We further find that Mr. Fertel was fully informed of all the facts before he entered into the agreement as evidenced by the testimony of Mr. Ghio. Mr. Fertel is a sophisticated businessman who had been through the removal of a previous trustee one year earlier. He knew or should have known that he did not have cause to remove Mr. Durand; thus in exchange for the payment of additional compensation, Mr. Fertel received valuable consideration: Mr. Durand’s resignation. Mr. Fertel was not forced or coerced to enter into the contract with Mr. Durand; he could have filed, suit seeking his removal. Therefore, Mr. Fertel received something of value in exchange and the agreement is not void for lack of consideration. We find that the law of trusts does not prohibit the agreement and that Mr. Durand did not breach his fiduciary duty as the trustee.
*305 |i;>Mr. Fertel also contends that Mr. Durand breached his fiduciary duty as his attorney by violating Rule 1.8 of the Rules of Professional Conduct governing attorneys. Rule 1.8 provides in pertinent part:
Rule 1.8. Conflict of interest: Prohibited transactions
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation to the client’s disadvantage. Examples of violations include, but are not limited to, the following:
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, posses-sory, security or other pecuniary interest adverse to a client unless:
(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) The client consents in writing thereto.
Initially, we find that Mr. Durand entered into the severance contract with Mr. Fertel in his capacity as trustee for the trusts. However, to the extent that he was acting as attorney for Mr. Fertel at the time, we find that Mr. Durand complied with Rule 1.8.
First, the contract of 1 December 2000 was in writing and Mr. Fertel consented to the contract in writing. Second, Mr. Fer-tel had ample opportunity to seek indepen-dent advice of counsel between October and December 2000, and the record re-fleets that he did, in fact, receive advice of counsel before he signed the ^agreement.[11] In addition, Mr. Fertel had six months in which to repudiate the contract before signing the 7 June 2001 Resignation of Trustee, in which he confirmed the previous agreement. Mr. Fer-tel has not presented any evidence that (1) Mr. Durand hid facts from him, (2) he was unable to seek the advice of independent counsel, or (3) he did not understand the terms of the agreement. In fact, the actions taken by Mr. Fertel in June 2001 evidence his complete understanding of the ramifications of the 1 December 2000 contract. These actions include his statements to third persons that he had no intention of paying Mr. Durand under the contract and his instructions to Mr. Ghio to stop making the payments.
Finally, the trial court found that Mr. Fertel “repudiated any obligation to make any payments under said contract, thus creating an “anticipatory breach” thereof ...” The doctrine of anticipatory breach of contract “applies when an obli-gor announces he will not perform an obligation which is due sometime in the future. The obligee need not wait until the obligor fails to perform for the contract to be considered in breach.” Gulf Coast Bank & Trust Co. v. Rick Granger Enterprises, 2001-0656, p. 3 (La.App. 3 Cir. 10/31/01), 800 So.2d 402, 404 (quoting B & G Crane Service, Inc. v. Aetna Cas. and Sur. Co., 586 So.2d 710, 712 (La.App. 3 Cir.1991), writ denied, 590 So.2d 591 (La.1992)). Where a party refuses and does not merely fail or neglect to comply with his con *306 tractual obligation, his refusal constitutes an active breach of the contract, which relieves the other party of the obligation of continuing to perform under the contract. Andrew Dev. Corp. v. West Esplanade Corp., 347 So.2d 210, 212-13 (La.1977).
| uThe trial court’s finding of anticipatory breach is well supported by the record, primarily in Mr. Fertel’s own affidavit wherein he stated that it was never his intention to pay Mr. Durand any compensation if not earned. In addition, both Mr. Ghio and Ms. Simon testified that shortly after he signed the June 2001 resignation, wherein he confirmed his 1 December 2000 obligation to make the severance payments, Mr. 'Fertel stated his intention to dishonor the contracts. In light of Mr. Fertel’s anticipatory breach of the 1 December 2000 contract, Mr. Durand was relieved of his duty to perform legal and/or trustee services to earn the severance pay, although we do not find that he was obligated to do so under the clear and unambiguous language of the contract.
Pursuant to La. C.C.P. art. 966, the initial burden of proof remains on the mover to show that no genuine issue of material fact exists. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to meet this burden, no genuine issue of material fact exists, and the mover is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Carter v. Baver, 2002-0765 (La. App. 4 Cir. 5/29/02), 821 So.2d 496.
|1RAfter reviewing the record, we hold that Mr. Durand met his burden of proving an enforceable contract. We further find that Mr. Fertel does not controvert the facts presented in Mr. Du-rand’s affidavit and that Mr. Fertel has not demonstrated a genuine issue of material fact thereby precluding summary judgment.[12] Consequently, we find that the words of the 1 December 2000 contract are clear and unambiguous and should be enforced as written. Accordingly, we affirm the trial court’s entry of summary judgment and assess all costs of this appeal to Mr. Fertel.

AFFIRMED.

LOVE, J., dissents.

. This case originally began as an action to terminate the original trust created in 1975 (Trust No. 1) established by Ruth U. Fertel to protect her then two minor sons and remove the original Trustee, Phillip S. Brooks. Mr. Brooks subsequently resigned, but the trust remained in full force and effect.

. By judgment rendered on 28 November 2001, Mr. Durand's prayer to have his resignation voided was waived pursuant to his request.

. All other issues between the parties were settled and are not before the court in this appeal.

.The co-trustees' duties are memorialized in a document entitled Original Understanding Between Jerome S. Fertel and his New Trustees, John V. Ghio and Allan L. Durand.

. We understand that Mr. Durand’s conversation with Ms. Fertel constitutes hearsay, although it was not objected to during the deposition. In any event, this testimony provides a backdrop against which the resignation occurred.

. Mr. Durand’s affidavit, which is part of the record, is substantially similar to his deposition testimony.

. Mr. Ghio testified in his deposition that he and Mr. Durand both told Mr. Fertel that they would resign with three months notice and that it would not cost Mr. Fertel a million dollars to get rid of them. Mr. Durand denies that he said this to Mr. Fertel.

. Mr. Fertel argues that his affidavit creates a genuine issue of fact. While we agree that the difference in the testimony regarding resignation, see n. 7 supra, creates an issue of fact, we do not find that the issue is material to the determination of the case. A fact is "material” when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Couture v. Guillory, 97-2796 (La.App. 4 Cir. 4/15/98), 713 So.2d 528, writ denied, 98-1323 (La.6/26/98), 719 So.2d 1287. Because we find that the parties voluntarily entered into a contract that clearly and unambiguously modifies any prior oral agreements with respect to termination/ this fact is not essential to either party's case.

. Also relevant is La. R.S. 9:2181, which states:
A trustee is entitled to reasonable compensation from the trust estate for his services as trustee, unless the trust instrument provides otherwise or unless the trustee waives compensation.

. Black's Law Dictionary, p. 1138 (5th Ed.1979), defines reasonable as fair, proper, just, moderate, suitable under the circumstances.

. We note that the rule as presently written only requires that the attorney give the client the opportunity to seek independent counsel. The rule does not mandate that the client actually obtain such legal advice.

. La. C.C. art. 1983 mandates that contracts be performed in good faith. Bad faith is not the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will. Williams v. Coe, 417 So.2d 426, 430 (La.App. 1 Cir. 1982). The term bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives. Weysham v. Harney, 518 So.2d 1059, 1061 (La.App. 4 Cir.1987), writ denied, 521 So.2d 1172 (La.1988), We find that a person cannot create an issue of material of fact by asserting his bad faith in an affidavit in order to defeat a motion for summary judgment. Although Mr. Fertel does not state that he was in bad faith when he entered into the 1 December 2000 contract, he admits in his affidavit that he never intended to pay Mr. Durand for services not performed as trustee. In light of the clear and ambiguous contractual language to the contrary, the only reasonable conclusion is that Mr. Fertel was neither in good faith when he signed that contract nor when he signed the June 2001 Resignation of Trustee.