# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 5, 2011          Decided June 24, 2011

No. 10-5245

AMERICAN NATIONAL INSURANCE COMPANY AND AMERICAN
NATIONAL PROPERTY AND CASUALTY COMPANY,
APPELLANTS
FARM FAMILY LIFE INSURANCE COMPANY AND FARM FAMILY
CASUALTY INSURANCE COMPANY,
APPELLANTS
NATIONAL WESTERN LIFE INSURANCE COMPANY,
APPELLANT

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER
FOR WASHINGTON MUTUAL BANK, HENDERSON, NEVADA, ET
AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01743)

---

*Gregory Stuart Smith* argued the cause for appellants. With
him on the briefs were *Andrew J. Mytelka* and *James M.
Roquemore*.

*Joseph Brooks*, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellee Federal Deposit Insurance Corporation, As Receiver For Washington Mutual Bank. With him on the brief were *Colleen J. Boles*, Assistant General Counsel, *Lawrence H. Richmond*, Senior Counsel, and *John J. Clarke Jr. R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Robert A. Sacks* argued the cause for appellees JPMorgan Chase & Co., et al. On the brief were *Bruce E. Clark* and *Stacey R. Friedman.*

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Bondholders of the failed Washington Mutual Bank allege that JPMorgan Chase, through a series of improper acts, pressured the federal government to seize Washington Mutual Bank and then sell to it the bank's most valuable assets, without any accompanying liabilities, for a drastically undervalued price. The bondholders asserted three Texas state law claims in Texas state court, but, after the Federal Deposit Insurance Corporation intervened in the lawsuit, the case was removed to federal district court. Finding that 12 U.S.C. § 1821(d)(13)(D)(ii) jurisdictionally barred appellants from obtaining judicial review of their claims because they had not exhausted their administrative remedies under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, the district court dismissed appellants' complaint. Because we hold that appellants' suit falls outside the scope of the jurisdictional bar of § 1821(d)(13)(D), we reverse the decision of the district court and remand for further proceedings.

**I.**

On review of a district court's dismissal of a complaint for lack of subject matter jurisdiction, we make legal determinations *de novo*. *Nat'l Air Traffic Controllers Ass'n, AFL-CIO v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 786 (D.C. Cir. 2010); *see* FED. R. CIV. P. 12(b)(1). We assume the truth of all material factual allegations in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged," *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)); *see also Talenti v. Clinton*, 102 F.3d 573, 574–75 (D.C. Cir. 1996), and upon such facts determine jurisdictional questions. Applying that standard to the complaint before us, we assume the following facts:

Prior to September 2008, Washington Mutual Bank ("WMB"), a wholly owned subsidiary of Washington Mutual, Inc. ("WMI"), was the nation's largest savings and loan association. Compl. ¶ 33. However, on September 25, 2008, the Office of Thrift Supervision ("OTS") seized WMB and placed it in receivership with the Federal Deposit Insurance Corporation ("FDIC"). *Id.* ¶ 64. On the same day, the FDIC signed a purchase and assumption agreement with JPMorgan Chase & Co. and its wholly owned subsidiary JPMorgan Chase Bank (collectively, "JPMC"), in which it agreed to sell to JPMC for $1.9 billion "the most valuable assets of [WMB] without any of [its] liabilities," including its obligations to unsecured debt holders and litigation risk. *Id.* ¶ 67. WMB's bond contracts remained with the FDIC-as-receiver, which now cannot meet its obligations under the contracts. *Id.* ¶ 71. Left without its "primary income-producing asset," WMI, which filed for bankruptcy immediately following the sale of WMB's assets to JPMC, became similarly unable to service its bond contracts, and its common stock was rendered worthless. *Id.* ¶ 70.

Again assuming the truth of the allegations in the complaint, the dramatic fall of WMB and WMI (collectively, "Washington Mutual") was engineered by JPMC. JPMC engaged in an elaborate scheme designed to "improperly and illegally take advantage of the financial difficulties of [WMI]" and "strip away valuable assets of Washington Mutual without properly compensating the company or its stakeholders." *Id.* ¶¶ 20, 30. To carry out this scheme, JPMC first "strategically plac[ed] key personnel [at Washington Mutual] to gather information regarding Washington Mutual's strategic business decisions and financial health," *id.* ¶ 25, and "misus[ed] access to government regulators to gain non-public information" about Washington Mutual, *id.* ¶ 32. Further, when Washington Mutual sought to sell itself, JPMC "misrepresented to Washington Mutual that it would negotiate in good faith for the purchase of the company" and engaged in sham negotiations with Washington Mutual to gain access to Washington Mutual's confidential financial information. *Id.* ¶¶ 53–54. Then, despite signing a confidentiality agreement with Washington Mutual, JPMC leaked harmful information to news media, government regulators, and investors, in an effort to "distort the market and regulatory perception of Washington Mutual's financial health," *id.* ¶¶ 46, 54, 58.

JPMC also applied direct pressure on the FDIC to effectuate its scheme: It "exerted improper influence over government regulators to prematurely seize Washington Mutual . . . and to sell assets of Washington Mutual without an adequate or fair bidding process," *id.* ¶ 32. Indeed, prior to the seizure of WMB, JPMC had already negotiated an agreement with the FDIC that, anticipating the seizure of WMB, set forth the requirements for a bid to purchase assets of WMB-in-receivership and provided for the transfer of WMB's valuable assets by the FDIC-as-receiver to JPMC, at a large profit to JPMC. *Id.* ¶¶ 47, 58, 62.

JPMC used its inside knowledge of Washington Mutual to create a bid for WMB that would be profitable to JPMC. *Id.* ¶ 58. When, just prior to the seizure of WMB, the FDIC sought official bids for WMB, JPMC submitted its prearranged bid, *id.* ¶¶ 58, 62–63, and the FDIC accepted it, *id.* ¶ 64. In quick succession, OTS then seized WMB and JPMC signed a purchase and sale agreement with the FDIC for the below-market sale of WMB's "cherry-picked" assets, stripped of liabilities. *Id.* ¶¶ 43, 64, 67.

On February 16, 2009, several insurance companies that hold bonds of WMB and bonds and stocks of WMI filed suit against JPMC in the District Court of Texas, Galveston County, alleging that JPMC's execution of its scheme had injured the value of their stocks and bonds. The insurance companies asserted three Texas state law claims: tortious interference with existing contract, *id.* ¶¶ 88–93, breach of confidentiality agreement, *id.* ¶¶ 94–99, and unjust enrichment, *id.* ¶¶ 100–03.

After JPMC filed its answer, the FDIC intervened in the lawsuit and thereby became a party to the action. *See* TEX. R. CIV. P. 60 ("Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party."). The FDIC then removed the action to the U.S. District Court for the Southern District of Texas, *see* 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), and successfully moved for a transfer of venue to the U.S. District Court for the District of Columbia.

Before the District Court for the District of Columbia, the FDIC and JPMC both filed motions to dismiss, and plaintiffs filed a motion to remand to Texas state court. Prior to disposition of these motions, plaintiffs voluntarily dismissed with prejudice all claims premised upon harm to their WMI bonds or stock. As a result, four original plaintiffs lost their stake in the suit, and all remaining claims alleged damage solely to WMB bonds.

On April 13, 2010, the district court issued a Memorandum Opinion and Order granting the FDIC and JPMC's motions to dismiss and denying plaintiffs' motion to remand, holding that it lacked jurisdiction over plaintiffs' suit. *Am. Nat'l. Ins. Co. v. JPMorgan Chase & Co.*, 705 F. Supp. 2d 17 (D.D.C. 2010). Plaintiffs timely moved to alter or amend the judgment and requested leave to file an amended complaint. The district court denied their motion on July 19, 2010. Plaintiffs appeal the district court's April 13, 2010, and July 19, 2010, orders.

## II.

The district court held that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA" or "the Act") barred it from exercising jurisdiction to hear appellants' claims. It held that because appellants' injuries depended on the FDIC's sale of Washington Mutual's assets to JPMC, § 1821(d)(13)(D)(ii) of FIRREA required it to dismiss appellants' complaint. *Id.* at 21.

Passed to "enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country," *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995), FIRREA creates an administrative claims process for banks in receivership with the FDIC. 12 U.S.C. § 1821(d)(3)–(13). The Act requires the FDIC to give notice to

the failed bank's creditors to file claims against the bank, § 1821(d)(3)(b), and authorizes the FDIC to receive and then disallow or allow and pay such claims, § 1821(d)(5), (10).

FIRREA allows claimants either to obtain administrative review, followed by judicial review, of "any [disallowed] claim against a depository institution for which the [FDIC] is receiver," or to file suit for *de novo* consideration of the disallowed claim in a district court. § 1821(d)(6)–(7). It also prevents a court from exercising jurisdiction, "[e]xcept as otherwise provided" in the Act, over:

> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

§ 1821(d)(13)(D).

Noting that § 1821(d)(6) is "[t]he only clause of the subsection that 'otherwise provide[s]' jurisdiction," *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998), we have described § 1821(d)(6) and § 1821(d)(13)(D) as setting forth a "standard exhaustion requirement," *id*. Section 1821(d)(6)(A) "routes claims through an administrative review process, and [§ 1821](d)(13)(D) withholds judicial review unless and until claims are so routed." *Id.*; *see also Freeman*, 56 F.3d at 1400 ("Section 1821(d)(13)(D) thus acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies.").

8

The question we must answer, the same as that addressed by the district court, is whether § 1821(d)(13)(D) applies to and bars the suit brought by appellants. The FDIC and JPMC argue that subsection (ii) of § 1821(d)(13)(D) bars appellants' claims, in the absence of administrative exhaustion under § 1821(d)(6), because they "relat[e] to" an act of the FDIC-as-receiver: the FDIC's sale of Washington Mutual's assets to JPMC. Alternatively, they contend that subsection (i) of the same provision withholds jurisdiction without administrative exhaustion because appellants' claims are "for payment from, or . . . seek[] a determination of rights with respect to, the assets" of Washington Mutual.

We disagree. First, subsection (ii) of § 1821(d)(13)(D) bars only *claims* that relate to an act or omission of the failed bank of the FDIC-as-receiver, and appellants' suit is simply not a "claim" under FIRREA. In FIRREA, the word "claim" is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process, and the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is receiver. Because appellants' suit is against a third-party bank for its own wrongdoing, not against the depository institution for which the FDIC is receiver (i.e., Washington Mutual), their suit is not a claim within the meaning of the Act and thus is not barred by subsection (ii).

Second, although subsection (i) of § 1821(d)(13)(D) reaches more broadly than (ii), encompassing not just "claims" but also "action[s] for payment from, or . . . seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver," its plain language excludes the suit brought by appellants. Appellants' suit seeks relief from JPMC for its own conduct; the mere fact that JPMC now owns assets that Washington Mutual once

owned does not render this suit one against or seeking a determination of rights with respect to those assets. *See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 394 (3d Cir. 1991) (holding that claims for damages against assuming bank for its own acts did not fall within jurisdictional bar of subsection (i) because "they seek neither payment from nor a determination of rights with respect to the assets of [the bank-in-receivership]" but from the assuming bank).

An examination of FIRREA as a whole demonstrates that "claim" is a term-of-art that encompasses only demands that are resolvable through the administrative process set out by FIRREA. The Act creates a comprehensive administrative mechanism simply for the processing and resolution of "claims." Indeed, it builds the components of the administrative mechanism by defining how "claims" are to be treated at each stage of the administrative process. For example, after establishing the "[a]uthority of [the FDIC-as-receiver] to determine claims," § 1821(d)(3), and the FDIC's "[r]ulemaking authority relating to determination of claims," § 1821(d)(4), FIRREA sets forth the "[p]rocedures for determination of claims," § 1821(d)(5), the requirements for "agency review or judicial determination of claims," § 1821(d)(6), the content of administrative "[r]eview of claims," § 1821(d)(7), the availability of "[e]xpedited determination of claims," § 1821(d)(8), the exclusion of certain "[a]greement[s] as [forming the] basis of claim[s]," § 1821(d)(9), and the authority of the FDIC to make "[p]ayment of claims," § 1821(d)(10). It borders on tautology, therefore, that "claims" are necessarily demands that come within the scope of FIRREA's administrative process. Stated another way, demands unresolvable through the process are not "claims," as the term is used in the Act. *See Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir. 1994) ("As a practical matter of statutory construction, . . . we proceed on the

assumption that Congress intended the 'claims' barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d)."); *Rosa*, 938 F.2d at 394 ("Whatever its breadth, we do not believe that clause (ii) [of § 1821(d)(13)(D)] encompasses claims that are not susceptible of resolution through the claims procedure.").

Several factors convince us that only claims against depository institutions for which the FDIC has been appointed receiver can be processed by the administrative system set forth in FIRREA. First, § 1821(d)(5)(A)(i), entitled "Procedures for determination of claims: Determination period: In general," provides that "[b]efore the end of the 180-day period beginning on the date any claim *against a depository institution* is filed with the [FDIC] as receiver, the [FDIC] shall determine whether to allow or disallow *the claim*" (emphasis added). FIRREA does not contain any other deadline for FDIC action for other types of claims. No other kinds of claims are ever specified in the provisions setting forth the administrative claims process. Rather, § 1821(d)(6), which establishes the availability of "agency review or judicial determination of claims," similarly governs only "claim[s] against a depository institution for which the [FDIC] is receiver," and subsequent claims process provisions refer simply to "claims." Furthermore, FIRREA authorizes the FDIC to allow and pay claims, *see* § 1821(d)(3)(A), (5)(B), (10)(A)–(B), and requires the FDIC to distribute "amounts realized from the liquidation or other resolution of any insured depository institution" in payment of claims, *see* § 1821(d)(11)(A). That such relief would be categorically inappropriate in cases not against a depository institution for which the FDIC is receiver strengthens our conviction that FIRREA's administrative claims process is available only to claims against depository institutions.

The FDIC and JPMC argue that the jurisdictional bar of § 1821(d)(13)(D) demonstrates that claims other than those against a depository institution can go through the administrative claims process. They claim that the broad language used in that subsection demonstrates that the claims process was intended to be more widely available. To be sure, we have construed § 1821(d)(6)'s "claim against a depository institution" language broadly in light of §§ 1821(d)(13)(D)(i) and (ii). *See Freeman v. FDIC*, 56 F.3d 1394, 1400–01 (D.C. Cir. 1995); *OPEIU, Local 2 v. FDIC*, 962 F.2d 63, 67 (D.C. Cir. 1992). Indeed, to have done otherwise would mean either ignoring Congress's use of such broad language in § 1821(d)(13)(D) or transforming FIRREA from an administrative exhaustion scheme into a grant of immunity, "a result troubling from a constitutional perspective and certainly not the goal of FIRREA," *Auction Co. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998); *see also id.* ("Congress did not intend FIRREA's claims process to immunize the receiver, but rather wanted to require exhaustion of the receivership claims before going to court." (quoting *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 848–49 (3d Cir. 1994))). We, however, have only construed the claims process broadly where either the failed depository institution or the FDIC-as-receiver might be held legally responsible to pay or otherwise resolve the asserted claim. Where, as here, neither the failed depository institution nor the FDIC-as-receiver bears any legal responsibility for claimant's injuries, the claims process offers only a pointless bureaucratic exercise. *See supra* 10–11. And we doubt Congress intended to force claimants into a process incapable of resolving their claims.

The FDIC and JPMC also assert that the principle motivating the Sixth Circuit's decision in *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008), bars this lawsuit. In *Village of Oakwood*, depositors of a failed bank sued

another bank (the "assuming bank") that had purchased various assets and liabilities of the failed bank from the FDIC-as-receiver. 539 F.3d at 376. Although plaintiffs in that case named only the assuming bank as a defendant in the action, their complaint alleged that the FDIC, not the assuming bank, had breached its fiduciary duty. *Id.* One of the four claims asserted against the third-party bank was aiding and abetting the FDIC's breach of its fiduciary duty. *Id.* Holding that plaintiffs' claims fell within the jurisdictional bar of FIRREA, the court of appeals explained that "permit[ting] claimants to avoid [the] provisions of [§ 1821](d)(6) and [§ 1821](d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." *Id.* at 386 (quoting *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1002–03 (4th Cir. 1994)) (alterations in original). In other words, the court of appeals rightly noted that plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically. Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a "claim" within the meaning of FIRREA's administrative claims process. Thus because the *Village of Oakwood* plaintiffs' suit was functionally a claim against the FDIC-as-receiver, which is a claim against the depository institution for which the FDIC is receiver, *see O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) ("[T]he FDIC as receiver steps into the shoes of the failed [bank]") (internal quotations marks omitted); § 1821(d)(2)(A) ("[T]he [FDIC] shall, . . . by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution."), the court of appeals correctly held the action jurisdictionally barred.

The suit appellants press, however, is clearly distinguishable from that in *Village of Oakwood*. As just described, in *Village of Oakwood* the wrongdoing alleged was perpetrated by the FDIC-as-receiver, which the assuming bank

allegedly aided and abetted. Here, in contrast, appellants allege that JPMC, not the FDIC-as-receiver or Washington Mutual, itself committed the tortious acts for which they claim relief. Although the complaint alleges that the FDIC engaged in conduct without which JPMC's tortious acts would not have caused injury to appellants, that actions by the FDIC form one link in the causal chain connecting JPMC's wrongdoing with appellants' injuries is insufficient to transform the complaint into one against the FDIC.

The FDIC and JPMC maintain that this case resembles *Village of Oakwood* because appellants' complaint is similarly premised upon wrongdoing by the FDIC: They argue that the complaint alleges an agreement between JPMC and the FDIC to commit the torts alleged. However, even if a suit against only a third party that alleged a conspiracy between the FDIC and the third party to commit the acts forming the basis of the claim were properly characterized as a suit against a depository institution—a question we do not reach—that is not the case here. Although appellants' complaint may be susceptible to the interpretation urged by the FDIC and JPMC, the procedural posture of this case requires us to construe the complaint liberally, in the light most favorable to appellants. *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Doing so, we read the complaint to allege that JPMC alone committed the wrongdoing for which appellants sue and find no agreement between JPMC and the FDIC.

We therefore hold that § 1821(d)(13)(D) does not withdraw jurisdiction from the judiciary to entertain appellants' lawsuit because their complaint neither asserts a "claim" under FIRREA nor constitutes an action for payment from, or seeking a determination with respect to, the assets of a depository institution for which the FDIC is receiver.

## III.

The FDIC and JPMC argue that we should uphold the district court's dismissal of appellants' complaint on an alternative jurisdictional ground. They contend that appellants lacked standing to bring their claims because the claims are for generalized harm to Washington Mutual and thus belong to the FDIC-as-receiver. *See* 12 U.S.C. § 1821(d)(2)(A) ("The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.").

Perhaps it is true that *if* either the exclusive right to bring appellants' claims or the right to preclude appellants from bringing those claims rested with Washington Mutual, that right was passed to the FDIC-as-receiver by operation of § 1821(d)(2)(A) and appellants may not assert those claims here. However, the question whether Washington Mutual had any such right was not decided by the district court. This question is complex and involves several layers of inquiry: Are the "rights, titles, powers, and privileges" inherited by the FDIC-as-receiver from Washington Mutual determined exclusively by reference to state law or does federal law play a role? If we should look to state law, which state's law governs the claims asserted in this case? What is the substance of the applicable body of law? And, most basically, is the ownership of the claims presented below a jurisdictional question, as the FDIC and JPMC suggest, or is it a question of whether appellants have a cause of action? We need not answer these knotty questions and instead remand to the district court to consider them in the first instance.

Because we conclude that § 1821(d)(13)(D) did not bar the district court from hearing appellants' suit and remand to the district court for further proceedings, we do not reach appellants' alternative arguments regarding the availability of subject matter jurisdiction or appellants' contention that the district court erred in denying its motion to alter or amend the judgment and for leave to file an amended complaint.

## IV.

For the reasons set forth above, we reverse the order of the district court and remand for proceedings consistent with this opinion.