Trudi T. SANDERS, Plaintiff,

v.

John F. KERRY, Secretary of U.S. Department of State, Defendant.

Civil Action No. 15-534 (RBW)

United States District Court, District of Columbia.

Signed 03/16/2016

Jerry Robert Goldstein, Jerry R. Goldstein, Silver Spring, MD, for Plaintiff.

Carl Ezekiel Ross, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

## ORDER

REGGIE B. WALTON, United States District Judge

The plaintiff, Trudi T. Sanders, filed this civil suit against the defendant, John F. Kerry, in his official capacity as the Secretary of the United States Department of State, alleging violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to e-17 (2012), the Rehabilitation Act, 29 U.S.C. §§ 701-718b (2012), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2012). Complaint ("Compl.") ¶¶ 1, 4, 5. Currently before the Court is the Defendant's Motion for Partial Dismissal ("Def.'s Mot."). After careful consideration of the parties' submissions,[1] the Court must grant in part and deny in part the defendant's motion for the reasons stated below.

## I. BACKGROUND

The following allegations are derived from the plaintiff's complaint. The plaintiff is a "52-year-old[,] ... African-American female ...." Compl. ¶ 4. She "has diminished lung capacity, which affects her ability to breathe and, therefore, to walk."[2] Id.

---

1. In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of [the] Defendant's Partial Motion to Dismiss ("Def.'s Mem."); and (2) the Opposition to [the] Defendant's Motion for Partial Dismissal ("Pl.'s Opp'n").

Surprisingly, the defendant did not file a response to the plaintiff's opposition, despite asking for and receiving an extension of time to do so from the Court. See, e.g., September 10, 2015 Minute Order. Based on this inaction, the Court could treat the plaintiff's arguments as conceded, see, e.g., Benton v. Laborers' Joint Training Fund, No. 14-cv-1073, 2015 WL 7737304, at *1 (D.D.C. Dec. 1, 2015) ("And [the] [p]laintiff has failed to file any reply to [the] [d]efendant's opposition. As a result, the Court treats as conceded [d]efendant's argument ...."); David v. District of Columbia, 489 F.Supp.2d 45, 48 n. 7 (D.D.C. 2007) ("Because [the] [p]laintiff ... filed no reply to [the] [defendant's] opposition, the undersigned will deem [the defendant's] argument conceded."), but it will refrain from doing so.

2. Apparently, the plaintiff had "half of her lung" removed during "lung surgery" that occurred long ago. See Compl. ¶¶ 7-8.

¶ 8. "In addition, as a result of multiple cancer surgeries and radiation treatments, [the plaintiff] has lost all or parts of her liver, pancreas, spleen, gallbladder, bladder, and colon, which affects her genitourinary, immune, and cardiovascular systems, among other things, and causes her to have discomfort, pain, and fatigue when walking and doing other tasks, and also affects the frequency and time she needs to use the restroom." Id. The plaintiff alleges that, since 2011, her medical condition has been known by her employer, the Department of State—more specifically, the Management Analysis Section ("MAS") of the Messaging Systems Office ("MSO"), which is in the Information Resource Management Bureau ("IRM"). Id. ¶¶ 4, 9, 10, 14.

Between 2011 and 2013, the plaintiff has "discussed her medical conditions" and "her need for reasonable accommodations" in light of these conditions with her employer "[o]n many occasions." Id. ¶ 15. For example, accommodations that the plaintiff requested include "parking" at her office, "telework[ing]" from home, "flexible work hours" and/or an "alternate work schedule." Id.; see also id. ¶¶ 16-17. But her employer was, for the most part, unresponsive to the plaintiff's alleged need for such accommodations. See id. ¶¶ 16-18, 27(a)-(b) (alleging that her employer "did not engage in the interactive process" required under the Rehabilitation Act). The alleged failures to accommodate have caused the plaintiff to arrive at work "late many times" and forced her "to use leave frequently ...." Id. ¶ 20. In this same time frame, the plaintiff has also repeatedly requested that her employer evaluate her work performance biannually. See id. ¶ 12; see also id. ¶ 13. It was not until 2013 when she began to receive any performance evaluations. See id. ¶ 12.

Finally, the plaintiff asserts that for "discriminatory and/or retaliatory reasons," she "has been relentlessly harassed by" her employer and others associated with her employer. Id. ¶ 21. According to the plaintiff, examples of this harassment include without limitation: "an unwarranted Letter of Warning on or about March 7, 2014."[3] Id. ¶ 21(c). As a result of this alleged conduct, the plaintiff has had to file three complaints with the Equal Employment Opportunity Commission ("EEOC"). See id. ¶ 22.

## II. STANDARDS OF REVIEW

### A. Federal Rule Of Civil Procedure 12(b)(1)

▮ Rule 12(b)(1) permits a party to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When a defendant moves to dismiss under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject[-]matter jurisdiction ...." Biton v. Palestinian Interim Self–Gov't Auth., 310 F.Supp.2d 172, 176 (D.D.C.2004) (citation omitted). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C.Cir.2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C.Cir.2005)). However, because the plaintiff has the burden of establishing jurisdiction, a "court must give [a] plaintiff's factual allegations closer scrutiny when re-

---

**3.** The Court has focused on this alleged act of harassment because it is relevant to the defendant's motion for partial dismissal.

solving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." Byrum v. Winter, 783 F.Supp.2d 117, 122 (D.D.C.2011) (citing Macharia v. United States, 334 F.3d 61, 64, 69 (D.C.Cir.2003)).

■ "Although 'the [d]istrict [c]ourt may in appropriate cases dispose of a motion to dismiss for lack of subject[-]matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C.Cir.2003) (quoting Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C.Cir.1992)). Thus, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C.Cir.2005).

## B. Federal Rule Of Civil Procedure 12(b)(6)

■ A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Moreover, a plaintiff receives the "benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins., 642 F.3d at 1139 (quoting Thomas, 394 F.3d at 972). However, raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Rather, a claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). While the court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937.

■ "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C.Cir.2007) (citation omitted). And among the documents "subject to judicial notice on a motion to dismiss" are "public records." Kaempe v. Myers, 367 F.3d 958, 965 (D.C.Cir.2004). Thus, the "court may consider [documents, such as] an EEOC complaint and Notice of Charge[,] without converting a motion to dismiss into a motion for summary judgment because such records are 'public document[s]' of which a court may take judicial notice.'" Ndondji v. InterPark Inc., 768 F.Supp.2d 263, 272 (D.D.C.2011) (quoting Ahuja v. Detica Inc., 742 F.Supp.2d 96, 101–02 (D.D.C.2010)).

## III. ANALYSIS

### A. Exhaustion Of Administrative Remedies

The defendant moves to dismiss the plaintiff's disparate treatment, retaliation, and hostile work environment claims under Title VII, the Rehabilitation Act, and the ADEA "because she has failed to meet her exhaustion requirements" under each stat-

ute, Def.'s Mem. at 5, 7, to the extent these claims are based on "her allegation that the March 7, 2014 Letter of Warning was an act of discrimination and/or retaliation,"[4] id. at 6. The record demonstrates otherwise.

■■■■ "Exhaustion of administrative remedies is a jurisdictional requirement for claims arising under the Rehabilitation Act." Koch v. Walter, 935 F.Supp.2d 143, 149 (D.D.C.2013) (citations omitted); see also Latson v. Holder, 82 F.Supp.3d 377, 385 (D.D.C.2015) (Walton, J.). Thus, the burden is on the plaintiff "to show that [she] has exhausted [her] claims under the Rehabilitation Act." Koch, 935 F.Supp.2d at 150; see also Latson, 82 F.Supp.3d at 385. "In contrast, failure to exhaust under the ADEA and Title VII is an affirmative defense, not a jurisdictional requirement." Koch, 935 F.Supp.2d at 150 (citations omitted); see also Latson, 82 F.Supp.3d at 386. And so the burden of showing failure to exhaust under these two statutes, instead, lies with the defendant. Koch, 935 F.Supp.2d at 150; see also Latson, 82 F.Supp.3d at 386. A court must be mindful that a plaintiff should not be deprived of judicial review based on failure to follow procedural technicalities of the exhaustion requirement, so long as the defendant has been "put on notice" of the plaintiff's claims. See Brown v. Marsh, 777 F.2d 8, 13 (D.C.Cir.1985); President v. Vance, 627 F.2d 353, 362 (D.C.Cir.1980); see also Parker v. Compass Grp. USA, Inc., 960 F.Supp.2d 235, 238 (D.D.C.2013) ("In deciding whether plaintiff failed to exhaust her administrative remedies, it is impor-

tant to remember that the principal functions of the EEOC filing requirement are to enable the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation." (citing De Medina v. Reinhardt, 686 F.2d 997, 1013 (D.C.Cir. 1982))).

■■■■ "Title 29 of the Code of Federal Regulations sets forth the administrative process for filing discrimination complaints against the federal government."[5] Latson, 82 F.Supp.3d at 384. One who believes she has been subjected to some form of discrimination by her federal-government employer "must consult a [c]ounselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a) (2012). "An aggrieved person must initiate contact with a [c]ounselor within 45 days of the date of the matter alleged to be discriminatory ...." Id. § 1614.105(a)(1). If her matter cannot be resolved through counseling, then she may timely file an administrative complaint with her employer's Equal Employment Opportunity ("EEO") office. See id. §§ 1614.105(d), 1614.106(a)-(c). Thereafter, she may amend the complaint "to include issues or claims like or related to those [already] raised in the complaint." Id. § 1614.106(d).

■■■■ Here, once the plaintiff received the Letter of Warning on March 7, 2014, an act she believed to be discriminatory and prohibited under federal law, she amended a then-pending EEO complaint to include this act as a basis for her disparate treatment, retaliation, and hostile work environment claims under each of

---

4. The defendant also contends that that the "[p]laintiff failed to timely exhaust her claim that she suffered gender discrimination while serving as Acting Director of the Intelligence Resources and Planning Division." Def.'s Mem. at 7. But this alleged action does not form the basis of any claim in the complaint; rather it was included in the complaint as "background information." Pl.'s Opp'n at 10.

5. The exhaustion process is the same under Title VII, the Rehabilitation Act, and the ADEA. See, e.g., Koch, 935 F.Supp.2d at 149 (citing 29 U.S.C § 633a(b)-(d); 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e–16(c)).

the federal statutes pertinent to this case well within the 45-day time frame she is permitted to contact an EEO counselor. See Pl.'s Opp'n at 7; see also Pl.'s Opp'n, Exhibit ("Ex.") 1 (Notice of Additional Incidents of Hostile Work Environment/ Harassment ("Notice to EEOC")) ¶¶ 1-2 ("Complainant has existing claims in this case[,] . . . which she has requested be consolidated with this case . . . for being subjected to a hostile work environment [by her employer] because of disability, age, race, sex, color, and retaliation[,] through a number of different acts of harassment . . . . [She] received an unwarranted Letter of Warning, dated March 7, 2014, . . . which represent[s] [an] [additional] exemplary incident[ ] of hostile work environment and retaliatory harassment . . . .").[6] There was "no objection" to the plaintiff's amendment. Pl.'s Opp'n, Ex. 2 (March 31, 2014 Agency's Response To Complainant's Notice of Additional Incidents ("Mar. 2014 Agency Response")) at 1-2 ("[A]fter providing a list of her pending claims of alleged discrimination, [c]omplainant contends that a March 7, 2014 Letter of Warning . . . 'represent[ed] [an] additional exemplary incident[ ] of hostile work environment and retaliatory harassment . . . .' Complainant thereby moves to include [this] [incident] among her pending claims. . . . [T]he [EEOC] has no objection

to adding [this] claim[ ] to [c]omplainant's myriad pending claims of alleged discrimination and retaliation."). This correspondence between the plaintiff and the EEOC is sufficient for the Court to find that the plaintiff has exhausted her administrative remedies,[7] see Laughlin v. Holder, 923 F.Supp.2d 204, 217 n. 10 (D.D.C.2013) (no failure to exhaust administrative remedies where the plaintiff had amended administrative complaint to include allegations that supported hostile work environment claim); Powell v. Castaneda, 247 F.R.D. 179, 182 (D.D.C.2007) (finding exhaustion of administrative remedies where there was "documentation that the EEOC accepted amendments of claims," "which . . . dispenses of the counseling requirement"); id. ("a plaintiff [can] exhaust[ ] administrative remedies by amending the EEOC complaint" (citing Weber v. Battista, 494 F.3d 179, 184 (D.C.Cir.2007))), as the defendant had notice of the conduct that plaintiff deemed prohibited by the federal statutes at issue here, see, e.g., Brown, 777 F.2d at 13; President, 627 F.2d at 362; see also Parker, 960 F.Supp.2d at 238. The plaintiff has, therefore, properly exhausted her administrative remedies.

## B. Retaliation Claims

To sustain a retaliation claim under Title VII, the ADEA, or the Reha-

---

6. As both parties rely on other documents outside the complaint, in an abundance of caution and consistent with this Court's prior practice, the Court shall convert the partial motion to dismiss to a motion for summary judgment. See Langley v. Napolitano, 677 F.Supp.2d 261, 263 (D.D.C.2010) ("[I]t is 'probably the better practice for a district court always to convert to summary judgment so as to avoid . . . question[s]' as to whether the attached exhibits were properly consider[ed] in ruling upon a motion to dismiss under Rule 12(b)(6)") (second alteration in the original) (quoting Marshall Co. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993))).

7. Moreover, the plaintiff's allegation concerning her March 4, 2014 Letter of Warning was ultimately investigated by the EEOC through another administrative complaint filed by the plaintiff. See Pl.'s Opp'n, Ex. 3 (July 31, 2014 EEOC Letter ("July 2014 Letter")) at 1 ("[W]e have identified the following specific allegations for investigation: . . . Because of your race (African-American), color (light-skin complexion), sex (female), age (DOB: [June 1962] ), disability (physical), and as acts of reprisal, you were discriminated against when . . . on March 7[, 2014] . . . , you received [a] letter[ ] of warning from your supervisor . . . .").

bilitation Act, the plaintiff must plausibly allege that she engaged in protected activity under each statute, suffered a materially adverse employment action, and there is a causal connection between the action and the protected activity. See, e.g., Koch v. Schapiro, 699 F.Supp.2d 3, 13–14 (D.D.C. 2010). Further, a "materially adverse" action "may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" Id. at 14 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). In other words, the challenged action must likely "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 548 U.S. at 60, 126 S.Ct. 2405).

■ The plaintiff has not properly pleaded any retaliation claim under either Title VII or the ADEA. There are simply no allegations from which the Court can plausibly infer that any challenged action was a result of the plaintiff's age, race, color, or sex. Indeed, the plaintiff's opposition to the defendant's motion confirms the Court's observation, as she only contends that retaliatory actions were taken in response to her "requests for reasonable accommodation[s] due to her medical condition[s] . . . ." Pl.'s Opp'n at 13. Thus, her retaliation claims under Title VII and the ADEA must be dismissed.

■ Her allegations plausibly make out a claim for retaliation, however, under the Rehabilitation Act.[8] The plaintiff asserts that she first engaged in protected activity no later than early 2011, when she joined the MAS and requested accommodations for her disability.[9] See Pl.'s Opp'n at 11 (citing Compl. ¶¶ 14-17). And thereafter, the defendant allegedly engaged in a series of employment actions in response to her requests for reasonable accommodations as a result of her disability—actions that could reasonably dissuade another employee from engaging in the same conduct. See Porfiri v. Eraso, 121 F.Supp.3d 188, 200 (D.D.C.2015) (permitting retaliation claim under Rehabilitation Act where the defendant, inter alia, "sat on . . . [an accommodation] request longer than necessary," made the plaintiff's "work more burdensome," and "denied certain accommodations"); see also Pl.'s Opp'n at 13-14; Compl. ¶¶ 21(a)-(o). Accordingly, the Court will permit the plaintiff to proceed on her Rehabilitation Act retaliation claim.

### C. Hostile Work Environment Claims

■ To sustain a hostile work environment claim under Title VII, the ADEA, or the Rehabilitation Act, the plaintiff must plausibly allege that conditions at her workplace subjected her to "unwelcomed harassment that was so severe and pervasive that it affected a term, condition, or privilege of employment and created a hostile work environment." Mokhtar v. Kerry, 83 F.Supp.3d 49, 82 (D.D.C.2015); see also Koch, 699 F.Supp.2d at 15. The totality of the circumstances surrounding the hostile work environment claim must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether

---

8. There is no dispute concerning whether the plaintiff is "disabled" under the statute.

9. The defendant argues that the plaintiff's "initial protected activity" was the filing of her "October 2011 EEO complaint." Def.'s Mem. at 10-11. That argument has been rejected by the District of Columbia Circuit.

Solomon v. Vilsack, 763 F.3d 1, 15 (D.C.Cir. 2014) ("[W]e join our sister circuits in holding that the act of requesting in good faith a reasonable accommodation is a protected activity under . . . the Rehabilitation Act[.]" (citations omitted)).

it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Court must be mindful that courts in the District of Columbia Circuit "frown[ ] on plaintiffs who attempt to bootstrap their alleged discrete acts of [discrimination or] retaliation into a broader hostile work environment claim." Baloch v. Norton, 517 F.Supp.2d 345, 364 (D.D.C.2007), aff'd sub nom. Baloch v. Kempthorne, 550 F.3d 1191 (D.C.Cir.2008); see also Peters v. District of Columbia, 873 F.Supp.2d 158, 191 (D.D.C.2012) (explaining same).

◼ Here, as the Court alluded to above, the plaintiff has not pleaded any allegations from which the Court can plausibly infer a hostile work environment claim under either Title VII or the ADEA because her allegations concern harassment as a result of her disability, as opposed to her age, race, color, or sex—so her hostile work environment claims under these two federal statutes must be dismissed.

◼ On the other hand, her hostile work environment claim fares better under the Rehabilitation Act—albeit not by much.[10] Although the plaintiff concedes that "many of the same [alleged] actions that demonstrate discrimination and/or retaliation[,] also demonstrate a hostile work environment," Pl.'s Opp'n at 14, there are also additional allegations that permit the Court to conclude that she has not merely amalgamated her discriminatory and retaliatory acts in contravention of Circuit precedent, compare, e.g., Compl. ¶¶ 9, 21(a)-(o), with Johnson v. Billington, 404 F.Supp.2d 157, 170 (D.D.C.2005) ("If [the

plaintiff] was ostracized at work because of his disability, if he was subjected to daily disparaging conduct by his supervisors because of his disability, if he was denied basic resources to do his work because of his disability, and if he was blocked from advancement opportunities due to disability-based animus, a reasonable jury could conclude that Johnson was subjected to a hostile work environment so extreme as to alter the terms and conditions of his employment. Furthermore, it is entirely possible that discovery in this case could yield additional evidence bearing on this claim."), and Pantazes v. Jackson, 366 F.Supp.2d 57, 71 (D.D.C.2005) (denying summary judgment for defendant on hostile work environment claim based on disability where plaintiff "offered evidence of alleged statements by various agency officials that suggest a discriminatory purpose, unreasonably lengthy delays by [the agency] in responding to his [repeated] requests for accommodations, and an inadequately explained refusal to provide needed ... training"). Thus, at least for now, the plaintiff's hostile work environment claim under the Rehabilitation Act survives the defendant's motion to dismiss. See Floyd v. Lee, 85 F.Supp.3d 482, 517 (D.D.C.2015) ("The prolonged denial of a reasonable accommodation can underlie a hostile work environment claim when 'all the circumstances' would support such a claim. That is, when making a hostile work environment determination, the jury can weigh a wrongful denial of accommodation alongside evidence of other harassment, and that other evidence can augment the weight of the denial by suggesting discriminatory animus." (emphasis added) (quoting Oncale v. Sundowner Offshore Servs.,

---

10. The Court notes that whether the Rehabilitation Act provides a cause of action for a hostile work environment has not been affirmatively decided by the Circuit. E.g., Kuraner v. Mineta, No. 00–5416, 2001 WL 936369, at *1 (D.C.Cir.2001) (assuming, without deciding, that such a claim exists). The Court will assume that such a cause of action exists as other members of this Court have on motions to dismiss. See, e.g., Buie v. Berrien, 85 F.Supp.3d 161, 179 n. 8 (D.D.C.2015).

Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998))).

## IV. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Defendant's Motion for Partial Dismissal is **GRANTED IN PART AND DENIED IN PART.** It is further

**ORDERED** that the defendant shall file an answer to the complaint within fourteen (14) days of this Order. It is further

**ORDERED** that the parties shall appear for an initial scheduling conference on April 29, 2016, at 11:45 a.m.

**SO ORDERED** this 16th day of March, 2016.