[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12380
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00379-WKW-TFM

SUNSOUTH BANK,

Plaintiff-Appellant,

versus

FIRST NBC BANK,
HCB FINANCIAL CORP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 30, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

SunSouth Bank filed a lawsuit against First NBC Bank and HCB Financial Corporation, alleging that they breached a contract that SunSouth had signed with a bank that was their predecessor in interest.  The district court found that it lacked jurisdiction because SunSouth had failed to exhaust its administrative remedies and dismissed the case.  SunSouth now appeals.

**I.**

This case involves three loans from Central Progressive Bank to Mississippi Investors VI, LLC.  We will refer to the first as "Loan 1."  That loan was secured by certain property in Mississippi that Mississippi Investors owned.  However, Central Progressive's security interest in the collateral property was subordinate to a security interest held by another company called Double A Firewood, Inc.  We will refer to the other two loans as "Loans 2 and 3."  Those loans were secured by property known as "Villages D and E"; no security interest in that property was superior to Central Progressive's interest.

SunSouth's claims stem from a Participation Agreement through which it purchased an interest in Loans 2 and 3.  Under the Agreement, SunSouth would receive a pro rata share of all principal and interest payments, and it would be repaid first if Mississippi Investors defaulted or Central Progressive foreclosed on Villages D and E.  The Agreement provided that it was governed by the law of the state where Central Progressive was located, which was Louisiana.

2

Mississippi Investors ultimately defaulted on all three loans, as well as its loan from Double A Firewood.  Because Double A Firewood had the superior interest in the property securing Loan 1, if it foreclosed on that property Central Progressive's interest would be extinguished.  Responding to that possibility, Central Progressive planned to purchase Double A Firewood's loan before the foreclosure sale.  But Central Progressive wanted help financing the purchase, so it gave SunSouth an ultimatum:  if SunSouth did not help fund the purchase of the loan, SunSouth's rights in the original Participation Agreement would be "terminated."  SunSouth refused to contribute, and Central Progressive purchased the Double A Firewood loan by itself.  The property securing all three loans was then auctioned off at a foreclosure sale.[1]  Central Progressive was the sole bidder and ended up owning all of the underlying property in addition to the loans.

In the wake of those events, SunSouth and Central Progressive spent months disputing Central Progressive's obligations under the Participation Agreement.  Before the dispute could be resolved, however, Central Progressive failed and the FDIC was appointed its receiver.  As receiver the FDIC completed a Purchase and Assumption Agreement (P&A Agreement) with First NBC; that Agreement transferred all of Central Progressive's assets to First NBC.  According to

---

[1] SunSouth claims that the foreclosure sale had nothing to do the Participation Agreement.  But the foreclosure sale's Trustee Deed expressly conveys "Villages D and E," which were the collateral for the loans implicated in the Participation Agreement (Loans 2 and 3), in addition to conveying the property securing Loan 1.

SunSouth's complaint, First NBC was able to resell the collateral for Loans 2 and 3, but First NBC refused to pass on any of the proceeds of the sales to SunSouth despite SunSouth's participation interest in the loans. First NBC then assigned its rights in Loans 2 and 3 to HCB.

SunSouth brought this lawsuit against First NBC and HCB, alleging that they owed it a portion of the funds that First NBC had collected because they were bound by the Participation Agreement between SunSouth and Central Progressive. The district court dismissed the case, finding that it lacked jurisdiction under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 because SunSouth had not exhausted its administrative remedies.

## II.

SunSouth contends that the Act's administrative exhaustion requirement does not apply to its breach of contract claims against First NBC and HCB. We review de novo a district court's dismissal for failure to exhaust administrative remedies under the Act. Damiano v. FDIC, 104 F.3d 328, 332 (11th Cir. 1997).

The Act provides that "no court shall have jurisdiction over . . . [a]ny claim relating to any act or omission of" a failed bank for which the FDIC has been appointed receiver. 12 U.S.C. § 1821(d)(13)(D); Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 (11th Cir. 1999). However, the courts have jurisdiction to review a plaintiff's case after it has exhausted its administrative

remedies under the Act.  Id. (citing 12 U.S.C. § 1821(d)(6)).  The applicability of § 1821(d)(13)(D)'s exhaustion requirement turns on "the actor responsible for the alleged wrongdoing" — it does not depend on which party the plaintiff happened to bring the case against.  Westberg v. FDIC, 741 F.3d 1301, 1306 (D.C. Cir. 2014).  Put another way, "[w]here a claim is functionally, albeit not formally, against a depository institution for which the FDIC is a receiver, it is a 'claim' within the meaning of [the Act's] administrative claims process," so the exhaustion requirement applies.  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1144 (D.C. Cir. 2011).

SunSouth argues that this case is distinguishable from Westberg, in which the D.C. Circuit held that the exhaustion requirement applied, 741 F.3d at 1307–08, and is similar to American National Insurance, in which the D.C. Circuit held that the requirement did not apply, 642 F.3d at 1144–45.  But putting aside any factual difference or similarities, both of those cases stand for the same proposition:  plaintiffs cannot circumvent the exhaustion requirement by strategically selecting defendants.  Westberg, 741 F.3d at 1306; Am. Nat'l Ins., 642 F.3d at 1144.

In that respect, we find the Eighth Circuit's decision in Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707 (8th Cir. 1996), to be instructive.  In that case the plaintiff contended that the FDIC had not honored preexisting loan obligations and had not

5

remedied breaches of contract by two failed banks. Id. at 713. The court held that the exhaustion requirement applied because "the genesis of [the plaintiff's] claim is the prereceivership misconduct by the failed banks." Id. at 713–14. It recognized that permitting plaintiffs to recast breach of contract claims against a failed bank as failure to cure claims against the successors in interest — as the Tri-State Hotels plaintiff tried to do — would allow strategic plaintiffs to avoid the exhaustion requirement at will. Id. at 713 n.9. Widespread circumvention of the requirement would, in turn, undermine the purpose of the Act's administrative process, which is to "dispose of the bulk of claims against failed financial institutions expeditiously and fairly." Id. (quoting H.R. Rep. No. 101–54(I) at 419–20 (1989)).

Likewise, in this case the genesis of SunSouth's claims is the alleged prereceivership misconduct by the failed bank. SunSouth's claims arose when Central Progressive informed SunSouth that Central Progressive would no longer honor the Participation Agreement because SunSouth refused to help purchase the Double A Firewood loan. Under Louisiana law Central Progressive's statement was an "anticipatory breach" that provided SunSouth with an immediate cause of action for breach of contract.[2] B & G Crane Serv., Inc. v. Aetna Cas. & Sur. Co., 586 So. 2d 710, 712 (Ct. App. La. 1991). Allowing SunSouth to circumvent the exhaustion requirement by claiming that First NBC and HCB failed to cure Central

---

[2] In addition, Central Progressive's failure to pay out any portion of the loans' collateral's sale price at the foreclosure sale likely breached the Participation Agreement.

6

Progressive's breach would defeat the purpose of the requirement.  See Tri-State Hotels, 79 F.3d at 713 n.9.  We decline SunSouth's invitation to do that.

As the district court found, the actor responsible for the alleged wrongdoing was Central Progressive.  As such, SunSouth's claims are "claim[s] relating to an[ ] act or omission" by a failed bank for which the FDIC was appointed receiver, and the claims are subject to administrative exhaustion.  See 12 U.S.C. § 1821(d)(13)(D)(ii).  We affirm the district court's finding that it lacked jurisdiction.[3]

**AFFIRMED.**

---

[3] SunSouth also contends that the FDIC's actions violated the Due Process and Takings Clauses.  First NBC and HCB are not subject to the Fifth Amendment because that Amendment only applies to "governmental actors."  See S.F. Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522, 542–46, 107 S. Ct. 2971, 2984–86 (1987).  And even assuming that a private party could assume liability for constitutional violations by a governmental predecessor in interest, the P&A Agreement contained no assumption of constitutional liability.