# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARAS SHEIKHI

       *Plaintiff*,

    v.

DONALD J. TRUMP *et al.*,

       *Defendants*.

Civil Action No. 19-2901 (TJK)

## MEMORANDUM OPINION

Dr. Aras Sheikhi brought this action against various U.S. officials, seeking to compel the Government under the Administrative Procedure Act (APA) or the Mandamus Act to finish processing his request for a waiver from Presidential Proclamation 9645, which otherwise bars him from receiving an employment-based immigration visa. Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons explained below, the Court finds that Dr. Sheikhi has established subject matter jurisdiction, but he has failed to state a claim. Thus, the Court will grant the motion and dismiss the case.

## I.    Background

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, governs admission of aliens into the United States. Admission normally requires a valid immigrant or nonimmigrant visa. *See* 8 U.S.C. §§ 1181, 1182, 1203. Once a visa application is "completed and executed before a consular officer," the "consular officer must issue the visa, refuse the visa . . . [or] discontinue granting the visa." 22 C.F.R. § 42.81(a). Congress has delegated to the President broad authority to exclude aliens under the INA:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f).

On September 24, 2017, President Trump signed Proclamation No. 9645, 82 Fed. Reg. 45, 161 (2017) ("Procl.") under this authority. ECF No. 1 ("Compl.") ¶ 41. The Proclamation placed entry restrictions on Iranian citizens, among others, because the Secretary of Homeland Security found that country's identity-management protocols and information-sharing practices relating to the screening of those seeking admission to the United States inadequate. Procl. §§ 2(b)(ii). Still, the Proclamation allows for case-by-case waivers for foreign nationals who show that (i) denying entry would cause undue hardship, (ii) entry would be in the national interest, and (iii) entry would not threaten the national security or public safety. *Id.* § 3(c)(i).

Dr. Sheikhi is an Iranian national who holds a bachelor's degree, master's degree, and doctoral degree in electrical engineering from Sharif University in Iran. Compl. ¶ 47. In October 2017, he began the process of applying for an employment-based immigration visa. *Id.* Under 8 U.S.C. § 1153(b)(2)(B)(i), employment-based visas may be issued to advanced degree holders—and the Attorney General may waive the requirement that that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States—if admission of the alien would be in the interest of the United States. *Id.* ¶ 25. Seeking to avail himself of this type of visa, Dr. Sheikhi sought classification from U.S. Citizenship and Immigration Services (USCIS) as an advanced degree holder whose admission as an immigrant would be in the interest of the United States. *Id.* ¶ 47.

On February 3, 2018, USCIS granted Dr. Sheikhi the advanced degree holder classification and ultimately transferred his visa application to the U.S. Embassy in Paris for processing. *Id*. ¶ 4, 48. On January 23, 2019, Dr. Sheikhi attended an immigrant visa interview at that U.S. Embassy. *Id*. ¶ 4, 49. In accordance with the Proclamation, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f) because Dr. Sheikhi is an Iranian national. ECF No. 10-3, Declaration of Chloe Dybdahl ("Dybdahl Decl.") ¶ 4. But Dr. Sheikhi requested a waiver from the Proclamation and submitted documentation to support his claim that he met its criteria. Compl. ¶ 49. On January 30, 2019, the consular officer made a preliminary determination that Dr. Sheikhi met two of the three requirements and "consulted with the Visa Office for interagency review" to determine whether Dr. Sheikhi's entry "could pose a threat to national security or public safety." Dybdahl Decl. ¶ 5.

Dr. Sheikhi's request for a waiver is "undergoing consideration" and his application for a visa "remains refused in accordance with the Proclamation." *Id*. ¶ 6. He filed this action in September 2019, about eight months after he requested the waiver. He seeks to compel the Government under the APA or the Mandamus Act to finish processing his waiver, thereby clearing the way for him to be eligible for the immigration visa. Later that year, the Government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* ECF No. 10-1 ("MTD Mem.").

## II.    Legal Standard

"When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court 'assumes the truth of all material factual allegations in the complaint and construes the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020)

(quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (alterations omitted)).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To "survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Bagherian*, 442 F. Supp. 3d at 92 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  A court need not accept legal conclusions unsupported by factual allegations.  *Id*. at 679.  In deciding a motion under Rule 12(b)(6), a court may consider the factual allegations in the complaint, documents attached as exhibits, or documents on which the plaintiff's complaint necessarily relies, even if the defendant is the one to produce the document through its motion to dismiss.  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).  Courts may also consider "matters of which we may take judicial notice."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.    Analysis

### A.    Subject Matter Jurisdiction

In arguing against subject matter jurisdiction here, the Government contends both that consular nonreviewability applies and that Dr. Sheikhi's case is moot.  Neither argument is persuasive.

### 1. The Consular Nonreviewability Doctrine

The Government first argues the doctrine of consular nonreviewability bars review of Dr. Sheikhi's claims. MTD Mem. at 7. Under that doctrine, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). This jurisdictional bar, however, "does not apply where the government has not made a final visa decision." *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017).

The consular officer in this case, relying on the Proclamation, denied Dr. Sheikhi's visa application. Dybdahl Decl. ¶ 4. In a typical case, the doctrine prevents judicial review of such a denial. *See Aboutalebi v. Dep't of State*, No. 19-cv-2605, 2019 WL 6894046, at *5 (D.D.C. Dec. 18, 2019) (no subject matter jurisdiction to review denial of visa). But here, the consular officer then began the process of considering whether to grant a waiver. Dybdahl Decl. ¶¶ 4–6. And for his part, Dr. Sheikhi represents he is not seeking to "review or overturn" the original denial. ECF No. 12 ("Opp'n") at 5. Thus, the question is whether the doctrine bars the court from reviewing the claims Dr. Sheikhi brings, the gravamen of which is that the Government has failed to timely process his request for a waiver.

There remains some question about whether, under these circumstances, the original visa decision is final, and thus subject to the doctrine of consular non-reviewability.[1] But "[e]very judge in this District who has considered the . . . question has held that the consular

---

[1] Compare *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *3 (D.D.C. July 29, 2020) ("where a plaintiff's visa application has been refused, but he remains under consideration for a waiver from the same Presidential Proclamation, 'the [visa] decision is not final' and consular nonreviewability is thus inapplicable") (collecting cases) with *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) ("[T]he doctrine of consular nonreviewability prevents this Court from reviewing the government's denial of the . . . underlying visa applications," even when "waiver applications are still in 'administrative processing.'").

nonreviewability doctrine does not apply to the waiver process so long as the government has not made a final decision whether to grant or deny the waiver." *Kangarloo v. Pompeo*, No. 20-cv-354, 2020 WL 4569341, at *3 (D.D.C. Aug. 7, 2020) (collecting cases). Thus, the consular nonreviewability doctrine does not bar his claims.

### 2. Mootness

The Government also argues that Dr. Sheikhi's claims are moot because his visa has already been denied. MTD Mem. at 15–17. Once again, this "argument . . . misunderstands [Dr. Sheikhi's] claim[s]." *Bagherian*, 442 F. Supp. 3d at 93. Fundamentally, Dr. Sheikhi does not seek to challenge the prior decision to deny his visa, he seeks to compel the processing of his waiver request. And because his request for a waiver is still under consideration, events have not "so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002). In other words, because an "order from this Court requiring defendants to process [his] waiver would affect the parties' rights . . . the case is not moot." *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020).

### B. The Merits

Turning to the merits, the Court agrees with the Government that Dr. Sheikhi has not stated a claim under the APA or for mandamus, and that the case must be dismissed.

### 1. APA Claim

Dr. Sheikhi alleges that the Government's delay in adjudicating his waiver violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); *see* Compl. ¶ 67. Moreover, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see* Compl.

6

¶ 68.  The Government argues that Dr. Sheikhi has failed to state a claim under the APA for several reasons.  *See* MTD Mem. at 11-13.  First, it argues that the decision to grant or deny a waiver under the Proclamation is discretionary, so that it "is committed to agency discretion by law" and thereby immune from judicial review under the APA, 5 U.S.C. § 701(a)(2).  Second, it contends that waiver program decisions are governed exclusively by the Proclamation, which is "a presidential action that is not subject to the APA."  MTD Mem. at 11.  And third, the government argues that, even if the APA applies, Dr. Sheikhi cannot show the State Department has unreasonably delayed its processing of his waiver request.  *Id.* at 13.

The first two arguments raise the issue of "whether government action or inaction taken pursuant to a presidential proclamation is reviewable under the APA, given that the President's actions are 'not subject' to the APA's requirements . . . a complex legal question for which there is not clear D.C. Circuit precedent."  *Bagherian*, 442 F. Supp. 3d at 94 (citations omitted).  Luckily, the Court need not grapple with them here.  Whether a claim is reviewable under the APA implicates a plaintiff's cause of action but does not affect the Court's subject matter jurisdiction under 28 U.S.C. § 1331.  *Oryszak v. Sullivan*, 576 F.3d 522, 524–25 (D.C. Cir. 2009).  Thus, because the question of whether a cause of action exists is not jurisdictional, a court may "assume[ ] that there is a cause of action available."  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 191 (D.C. Cir. 2006).  The Court will therefore follow the lead of several other courts in this District and assume that the decision to grant or deny a waiver is nondiscretionary and that Dr. Sheikhi's claim is reviewable under the APA.  *See*, *e.g.*, *Bagherian*, 442 F. Supp. 3d at 94; *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020); *Kangarloo*, 2020 WL 4569341, at *5.; *cf., e.g., Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 120–21 (D.D.C. 2020)

(claim reviewable under APA); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 42–43 (D.D.C. 2020) (same).

The Government's remaining argument—the one that carries the day for it—turns on whether Dr. Sheikhi "has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*, 2020 WL 1308376, at *7 n.6.  The test to determine whether an agency action has been unreasonably delayed is the six-factor test the D.C. Circuit established in *Telecommunications Research & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). Under *TRAC*, courts must consider:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 79–80 (cleaned up).  "[I]n cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's "complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (collecting cases).

8

The first factor is the most important, *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and it—along with the second factor—favors the Government. As many courts have recognized, "Congress has supplied no timeline for processing waiver applications," *Didban*, 435 F. Supp. 3d at 176, and it "has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017); *Sarlak*, 2020 WL 3082018, at *5 (citing same). And as discussed more below, courts in this District have found that it is not unreasonable under the APA for the Government to take between two and three years to adjudicate waivers to Proclamation 9645. *See Sarlak*, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.") (citing *Skalka*, 246 F. Supp. 3d at 154).

Dr. Sheikhi argues that when considering these timing factors, the Court should weigh the "internal operating procedures established by the agency," which show that it should be possible to process his waiver much more quickly. Opp'n at 15. He points to a new system implemented by the State Department in July 2019 that allows it to conduct national security and public safety inquiries *before* interviewing a visa applicant. *Id.*; *see also* ECF No. 12-2, Opp'n, Ex. 2, Testimony of Dep. Ass't Sec'y Edward Ramotowksi to H. Judiciary Comm. Subcomm. on Immigration & Citizenship and Foreign Affairs Comm. Subcomm. on Oversight & Investigations (Sep. 24, 2019) at 3("Ramotowski Test.").[2] And the new system supposedly allows the Department to issue a waiver "within days of the application" as long the "security check done prior to the interview not show any concerns." Ramotowski Test. at 3. This change

---

[2] Courts may take judicial notice of congressional testimony because the testimony is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Didban*, 435 F. Supp. 3d at 177 n.5 (taking judicial notice of same congressional testimony).

in capability, Dr. Sheikhi argues, shows that the Government is unreasonably delaying Dr. Sheikhi's waiver request because it has "identified no reason why they would be unable to apply this new procedure and complete Dr. Sheikhi's application in a matter of days." Opp'n at 15.

But this testimony, standing alone, does little to assist plaintiffs like Dr. Sheikhi, as many courts in this District have already found. *See, e.g., Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020); *Sarlak*, 2020 WL 3082018, at *5 (noting this evidence "suggests that [plaintiff's] two-year wait may be unusual," but not that it is "unreasonable"). The testimony does not suggest that Dr. Sheikhi is being treated differently than other similarly situated waiver applicants. Indeed, the testimony "support[s] the Government as [it] show[s] that the new automated vetting process is enabling the Government to work through the backlog of waiver applications." *Didban*, 435 F. Supp. 3d at 177 n.5. In the end, the testimony does not show that in processing his waiver, the Government is violating any statutory timetable or agency procedures.

The third factor likewise favors the Government. Unlike cases involving family separation, *see, e.g.*, *Zandieh*, 2020 WL 4346915, at *5; *Didban*, 435 F. Supp. 3d at 177; and *Kangarloo*, 2020 WL 4569341, at *6, Dr. Sheikhi's interest here is purely economic. He represented to the State Department that he sought to immigrate to the United States because the "value of his salary as an adjunct professor . . . continue[d] to drop, while the income he could be earning in the United States is worth at least ten times as much." ECF No. 2-8, Compl., Ex. E, ("Waiver Request") at 76. Moreover, he represented that he had lost "two of his three sources of income" due "to the re-imposition of sanctions against Iran by the United States government." *Id.* at 73. But he does not allege any other special threat to his health or welfare caused by his denial of admission to the United States. *Id.* at 73–76; Compl. ¶¶ 57–58.

The fourth factor, which requires accounting for the effects of expedited action on "agency activities of equal or greater priority," also favors the Government. *Ghadami*, 2020 WL 1308376, at \*9. Ordering the Government to process Dr. Sheikhi's waiver request is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Skalka*, 246 F. Supp. 3d at 154. Thus, delays caused by limited agency resources do not lend themselves to "judicial 'reordering[s] [of] agency priorities.'" *Bagherian*, 442 F. Supp. 3d at 96 (alterations in original) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)); *see also Sarlak*, 2020 WL 3082018, at \*6 (collecting cases). For these reasons, the D.C. Circuit has looked with disfavor on courts placing a plaintiff like Dr. Sheikhi "at the head of the queue" when doing so would "simply move[ ] all others back one space and produce[] no net gain." *In re Barr Labs.*, 930 F.2d at 75; *see also Ghadami*, 2020 WL 1308376, at \*9 (quoting *In re Barr Labs.* for same proposition); *Bagherian*, 442 F. Supp. 3d at 95–96 (same).

The fifth factor supports Dr. Sheikhi. As noted, his interest in coming to the United States is economic, but it is an important interest all the same. When he submitted his visa application, he had several job offers that may no longer be available. Compl. ¶ 57; Waiver Request at 74–76. He alleges that he lost the chance to publish a paper. Compl. ¶ 58. In sum, his inability to immigrate to the United States has likely materially affected his ability to provide for himself and his wife. *See id.* ¶ 59; Waiver Request at 73, 76.

The sixth factor does not apply because Dr. Sheikhi makes "no allegations regarding the Government's motivations." *Didban*, 435 F. Supp. 3d at 177.

Applying these factors, the Court ultimately concludes that Dr. Sheikhi has not stated a claim for unreasonable delay under the APA. His request for a waiver has been pending since January 2019, about twenty-two months. Courts in this District have found waiver-adjudication

delays of greater length reasonable. *Zandieh*, 2020 WL 4346915, at \*6 (twenty-nine months); *Sarlak*, 2020 WL 3082018, at \*6–7 (two years); *Ghadami*, 2020 WL 1308376, at \*8, 11 (twenty-five months); *Bagherian*, 442 F. Supp. 3d at 95–96 (twenty-five months); *Didban*, 435 F. Supp. 3d at 176–77 (two years). Indeed, several of this District's courts have noted that delays between three to five years are "often not unreasonable." *Sarlak*, 2020 WL 3082018, at \*6 (quoting *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at \*8 (C.D. Cal. Oct. 10, 2019). Even so, the Court echoes the view that "courts, facing growing delays, may well eventually need to set a point at which reasonableness ends" and expects the Government to make progress on its backlog. *Zandieh*, 2020 WL 4346915, at \*6.

### 2. Mandamus Claim

Dr. Sheikhi's mandamus claim fails for the same reason as his APA claim. To show entitlement to mandamus, a plaintiff "must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n. v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). The standard for reviewing agency delay is "the same under both § 706(1) of the APA and the Mandamus Act." *Bagherian*, 442 F. Supp. 3d at 96 (quoting *Skalka*, 246 F. Supp. 3d at 152). Thus, because the Court has concluded that a twenty-two-month delay is not unreasonable, it cannot order the Government to take any action via the mandamus route.

## IV. Conclusion

For all these reasons, Defendants' Motion to Dismiss, ECF No. 10, will be **GRANTED**. A separate order will issue.

12

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 24, 2020